**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Case No.:

RHONDA NESBITT, individually, and on behalf of all others similarly situated,

        Plaintiff,

v.

FCNH, INC., VIRGINIA MASSAGE THERAPY, INC., MID-ATLANTIC MASSAGE
THERAPY, INC., STEINER EDUCATION GROUP, INC., STEINER LEISURE LTD.,
SEG CORT LLC, doing business as the "Steiner Education Group,"

        Defendants.

---

## COLLECTIVE AND CLASS ACTION COMPLAINT

---

      PLAINTIFF, individually, and on behalf of all others similarly situated, by counsel

of record set out below, hereby alleges the following by way of her complaint against the

above-named Defendants:

JURISDICTION AND VENUE

1.        This Court has jurisdiction over the claims alleged herein because Plaintiff

seeks relief pursuant to the Fair Labor Standards Act ("FLSA") for the Defendants' failure

to pay minimum wages and/or overtime wages as required by 29 U.S.C. § 201-218 et. seq.

The employment relationship alleged to exist between the parties is subject to the FLSA

because the Defendants are properly deemed "employers" within the meaning of the FLSA

as they have in excess of $500,000 in yearly revenue and the employment alleged involved

1

the use or handling of goods that have moved or were moving in interstate commerce, as those terms are defined in the FLSA.

2.          This Court also has jurisdiction over claims alleged herein for relief in the nature of a Declaratory Judgment pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201 and 2202, because the Plaintiff seeks a determination her rights to proceed against the Defendants on her legal and equitable claims within this court, challenging the enforceability of the below referenced Arbitration Agreement.

3.          The Court has supplemental and original jurisdiction over the State Law claims alleged herein pursuant to 28 U.S.C. § 1367(a) and the Class Action Fairness Act of 2005, 28 USCS § 1332 ("CAFA").  Supplemental jurisdiction is properly exercised over such state law claims which present many overlapping and identical issues of law and fact as the FLSA claims.  CAFA jurisdiction is properly exercised over such state law claims as the value of those claims are believed to exceed $5,000,000 on behalf of the alleged class and the citizenship of the parties meets the diversity requirements of CAFA and the other conditions for this Court to assert jurisdiction under CAFA over such claims are present.

4.          Venue is properly placed in this Court as the uncompensated labor was performed by Plaintiff Rhonda Nesbitt and the represented parties for the Defendants, and that is at issue in this case was performed within the State of  Colorado and this district and Defendants do conduct and have conducted business within this judicial district.

PARTIES

5.          Plaintiff, Rhonda Nesbitt (the "Named Plaintiff" or "Plaintiff"), resides in the City and County of Denver, Colorado, within the judicial district of this Court.

6.         Plaintiff enrolled in and attended the educational services business programs run by the Defendants herein during the last three (3) year period of time prior to the filing of this Complaint.

7.         Defendant FCNH, INC. is a corporation formed and existing pursuant to the laws of the State of Florida.

8.         Defendant VIRGINIA MASSAGE THERAPY, INC., is a corporation formed and existing pursuant to the laws of the State of Virginia.

9.         Defendant MID-ATLANTIC MASSAGE THERAPY, INC., is a corporation formed and existing pursuant to the laws of the State of Maryland.

10.        Defendant STEINER EDUCATION GROUP, INC., is a corporation formed and existing pursuant to the laws of the State of Florida.

11.        Defendant STEINER LEISURE LTD., is a Bahamas international business company with its principle place of business in the United States, being in the State of Florida.

12.        Defendant SEG CORT LLC, is a limited liability corporation formed and existing pursuant to the laws of the State of Florida.

13.        All of the Defendants are involved in the management or operation, or have an ownership interest either directly or through intermediaries or subsidiaries that they own and control, in some or all of the locations that conduct commercial operations and business as part of the Steiner Education Group.

14.        Defendants, or some of them, are registered to do business in the United States, and/or do business under the names Arizona School of Massage Therapy, Steiner Institute of Esthetics, Cortiva Institute, Denver School of Massage Therapy, Connecticut

Center for Massage Therapy, Florida College of Natural Health, Baltimore School of Massage, Nevada School of Massage Therapy, Texas Center for Massage Therapy, Utah College of Massage Therapy, Virginia School of Massage, Defendants publicly identifying all of those business operations as being part of what they term the "Steiner Education Group" as depicted on the website run by the Defendants, www.steinered.com. The term "SEG" as used hereafter refers to all of the Defendants and their foregoing operations as the "Steiner Education Group."

15.        SEG conducts the activities alleged herein and that give rise the claims made in this complaint at or about 31 campuses which also offer educational programs in massage therapy and/or esthetics in the states of Arizona, Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, New Jersey, Pennsylvania, Texas, Utah, Virginia, and Washington.

<u>CLASS ACTION AND REPRESENTATIVE ALLEGATIONS</u>

16.        The named Plaintiff brings this action on her own behalf, and on behalf of the collective group or class (hereinafter "class") of all persons similarly situated and on behalf of the general public.

17.        The class consists of all persons who were, as alleged herein, wholly uncompensated employees of the Defendants in their profit-making personal services businesses under the FLSA, such class claims being brought pursuant to 29 U.S.C. § 216(b) which authorizes lawsuits on behalf of others similarly situated, such lawsuits often referred to as "collective" and not "class" actions, in they differ from traditional class actions. Some or all of such persons who are alleged to be similarly situated and members of the FLSA class are also entitled to relief under the laws of the States of Arizona,

4

Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, New Jersey, Pennsylvania, Utah, and Washington (the "state claims"), as alleged herein. It is asserted that the state claims are properly subject to class action treatment under FRCP Rule 23 for the reasons alleged herein.

18.     The class claims asserted in paragraph 17 encompass under the FLSA the time period from three years prior to the commencement of this action through the date of any judgment, such claims encompassing for state law purposes the statute of limitations applicable to each state's law as determined by the date of the commencement of this action through date of any judgment.

19.     The class of persons identified in paragraph 17 is in excess of 1,000 and is so numerous that the joinder of each member of the class is impracticable.

20.     There is a well-defined community of interest in the questions of law and fact affecting the class the named Plaintiff proposes to represent. The class members' claims against Defendants involve questions of common or general interest, in that their claims are based on Defendants' failure to pay any wages whatsoever to such persons despite the FLSA's requirement, as alleged herein, that such persons be paid at least the minimum hourly wage provided for in 29 U.S.C. § 206, such conduct also violating the legal obligations imposed upon the Defendants under the various state laws alleged herein. These questions are such that proof of a state of facts common to the members of the class will entitle each member of the class to the relief requested in this Complaint.

21.     The named Plaintiff will fairly and adequately represent the interests of the class, because the named Plaintiff is a member of the class and the claims of the named Plaintiff are typical of the claims of those in the class. The named Plaintiff has retained

experienced counsel competent to represent the class, the adjudication of the putative

FRCP Rule 23 class claims on a class action basis is superior to other means of

adjudication of such claims and/or is desirable based upon the common actions of the

Defendants towards the class and/or the risk of inconsistent adjudications and uncertainty

regarding the proper standard of conduct by the Defendants if such claims were subject to

multiple individual litigations and/or the other criteria of FRCP Rule 23 are met warranting

the class action certification of such claims.

RELEVANT FACTS OF THE DEFENDANTS' BUSINESS
OPERATIONS AND THE PARTIES' RELATIONSHIP

22.        The Defendants are for-profit businesses, meaning they are not registered

with, or recognized by, any State or the United States as non-profit or charitable

enterprises.

23.        The Defendants are for-profit businesses, meaning they are required by law

to file tax information reports or tax returns with the United States Internal Revenue

Service and on none of those filings is it indicated that they are a charity or non-profit

business within the meaning of the statutes and regulations that govern their obligation to

file those reports or returns.

24.        SEG's for-profit business activities at its campuses in the United States

include providing educational services (the "educational services business") to paying

students in fields of massage therapy and esthetics, which includes training students to

practice, as regulated by various state laws, the trades of massage therapy and esthetics or

skin care.

25.        SEG's for-profit business activities at its campuses in the United States also

includes the providing of personal services, for a fee, to members of the public (the

"personal services business") who in exchange for paying such a fee receive massage therapy and/or esthetics services.

26.        SEG's for-profit personal services business activities at its campuses in the United States are designed to generate a profit for Defendants and does generate a profit for the Defendants and the revenue Defendants receive from the fees SEG charges to the public for the personal services provided by such business exceed the value of the materials, if any, that such members of the public consume during the receipt of such services.

27.        Defendants utilize the labor of the class members, who have also purchased the educational services provided by SEG in its educational services business, in SEG's personal services business.

28.        The class members are paid no compensation by the Defendants for the labor they provide in SEG's personal services business, meaning they receive no payments in United States currency or in instruments that are convertible as a matter of law into such currency in exchange for furnishing such labor.

29.        The labor provided by the class members in SEG's personal services business was and is essential to that business, in that the labor needed to provide the personal services to the members of the public, for which such members of the public paid a fee to SEG, was furnished exclusively or predominately by the class members.

30.        Without the labor provided by the class members, SEG's personal services business would either cease to operate or would have to secure labor from other persons who would have to be compensated at a minimum hourly wage as required by the FLSA and such state laws.

31.         SEG actively promotes and advertises its personal services business to the

public on its website and through other means and induces the purchase of those services

by offering them to members of the public at a cost lower than the cost typically charged by

other business that provide such services and do not utilize uncompensated labor to provide

such services.  SEG's website promotes the same by providing a "Public Clinic" link for

each of its campuses and programs.  That website makes the following statement(s):

> Looking for a massage or skin care treatment at an affordable price? Look no
> further than the 32 (*sic*) campuses of the Steiner Education Group.
> Major spas from all across the country come to our schools every year to recruit our
> students before they even graduate, because they know that our schools produce the
> high-quality massage therapists and estheticians they need to keep their high-end
> clientele coming back again and again.
>
> You can experience that quality at an unbelievably low price by visiting one of our
> public clinics. SEG students perform more than 200,000 massage and skin care
> treatments per year at these clinics.

Such website link allows members of the public to receive further information about the

personal services being offered by SEG using the labor of the class members.  Certain

pages of such website also include the following statement:

> Relax and enjoy the healing properties of massage therapy at one of our weekend
> massage clinics for only $25. That's right – **get a 50-minute, full-body massage
> for only $25!**

32.         SEG's for-profit personal services business at its campuses in the United

States compete with other profit making businesses that provide the same personal services

that it provides to the members of the public, in that members of the public have available

to them other providers of such personal services besides SEG who, for a fee, will provide

such personal services.

33.         SEG is able to advantageously compete with other profit making businesses

that provide the same personal services that it provides to the members of the public by

charging members of the public lower fees for such services than those charged by its competitors.

34.　　　　SEG's ability to provide the same personal services to members of the public as are provided by its competitors, and earn a profit by doing so despite charging less for those services than its competitors, is either substantially or entirely the result of SEG enjoying lower operating costs in its personal services business because it provides such services to the public using the class members' unpaid labor while its competitors must pay at least the minimum hourly wage required by the FLSA or state law to their employees who provide the same labor and services to the public.

35.　　　　Defendants could have the class members provide personal services to the public without charge. Defendants could have levied only for a charge equivalent to the actual cost, if any, of the materials consumed in providing such personal services to members of the general public.

36.　　　　Defendants, however, do not take the actions set out in paragraph 35. Rather, the Defendants have made a conscious decision not to have the class members provide personal services to the public without charge, or only for a charge equivalent to the actual cost, if any, of the materials consumed in providing such personal services.

37.　　　　The Defendants have made a conscious decision not to have the class members provide personal services to the public without charge, or only for a charge equivalent to the actual cost, if any, of the materials consumed in providing such personal services, and have made that decision so SEG can operate a profit making personal services business that competes with other enterprises that also provide such personal services and are not in the educational services business.

38.        While the class members' labor in SEG's personal services business benefits them in securing experience providing such personal services and in achieving their ultimate goal of being licensed to practice their desired occupation, Defendants' decision to operate SEG's personal services business as a profit making venture is irrelevant to the class members' education and occupational goals. This is because the class members would enjoy the exact same benefit if SEG did not charge members of the public any fee for such personal services, or if it only charged a fee sufficient to cover the actual cost of the materials, if any, consumed by such members of the public while receiving such personal services.

39.        The Defendants' educational services business neither requires nor benefits from the Defendants' decision to charge members of the public for providing personal services and to carry on a profit making personal services business utilizing the unpaid labor of the class members.

40.        The Defendants' carrying on of a for profit personal services business, utilizing the unpaid labor of the class members, has the effect of depressing wages and employment opportunities generally among workers who would otherwise provide those personal services. That depression of wages and employment opportunities arises because Defendants are paying nothing whatsoever for the class members' labor used to provide such services, which in turn results in Defendants being able to conduct a profit making personal services business that charges members of the public less than its competitors must charge, such competitors paying at least the minimum hourly wage required by the FLSA and applicable state law to their employees.

41.        Such ability of the Defendants to secure labor for their profit making

personal services business, without paying at least the minimum hourly wage required by the FLSA and applicable state law for that labor, results in other businesses which provide the same personal services and that do pay such minimum hourly wages being influenced not to increase the wages of their workers above that minimum hourly amount or hire more workers to provide such services. Such other businesses are influenced not to do those things as a direct and proximate result of SEG's utilization of the class members' unpaid labor and SEG's ability, as a result of such utilization, to sell such personal services to the public for an amount less than such other businesses could charge and still make a profit.

42. The amount of hours of unpaid labor that the class members performed in SEG's personal services business is known to the Defendants who kept detailed contemporaneous records of those hours of work and in respect to each of the named Plaintiff such hours of work were at or in excess of 85 hours per student.

<u>HOW THE RELEVANT FACTS ESTABLISH AN
EMPLOYMENT RELATIONSHIP FOR THE PURPOSES
OF THE FLSA AND STATE LAW</u>

43. The relationship between Defendants and the putative class members, in respect to the labor provided by the putative class members in SEG's personal services business, is one of employer and employee for the purposes of the FLSA and state law. That employment relationship exists for the following reasons:

(a) The class members provided labor in SEG's personal services business that was immediately advantageous to Defendants and the profitability of such business was substantially or wholly dependent upon such labor;

(b) The class members, while receiving a benefit from their labor in SEG's personal services business in the form of experience that assisted them in achieving their occupational goals, were simultaneously conferring a valuable economic benefit upon the Defendants, which were charging the public for the services of the class members and profiting from such charges;

11

(c)     The class members' labor in SEG's personal services business displaced or made unnecessary the employment of the persons SEG would have otherwise had to employ, and pay wages to, for the performance of the labor that the class members furnished and from which the Defendants profited;

(d)     Certain of the class members' labor did not and could not confer any educational or occupational benefit whatsoever upon such class members, in that the class members, or some of them, were required by Defendants to spend time not actually performing personal services on customers but performing manual labor or administrative functions including, but not limited to, janitorial, clerical or logistical functions, that were essential and necessary for the conducting of SEG's personal services business but which had no educational purpose or benefit to the class members and for which time expenditures Defendants failed and refused to pay the class members any wages whatsoever; and

(e)     For the reasons stated in paragraph 38, as SEG's utilization of the unpaid labor of the class members in a commercial, for-profit, personal services business depresses the wages of employees in that industry and lessens the employment opportunities in that industry.

(f)     Neither educational instruction nor direct supervision was provided by Defendants to the class members while they were performing the labor and services for the public in the clinic setting.

### HOW THE RELEVANT FACTS RENDER
### STEINER LEISURE LTD LEGALLY RESPONSIBLE
### FOR THE PLAINTIFF' CLAIMS

44.     Defendant Steiner Leisure Ltd. ("Steiner") by virtue of its ownership and/or control of SEG, was empowered to make, and did make, the decisions to have SEG institute and/or continue the Defendants' practices that are alleged to have created an employer and employee relationship between SEG and the Plaintiff and the class members for the purposes of the FLSA and the state laws that are alleged in this complaint, such actions by Steiner also causing the violations of the FLSA and state law alleged in this complaint.

45.     Steiner, by virtue of its ownership and/or control of SEG, could have, but did not, make the decision to have SEG, discontinue the Defendants' practices that are

alleged to have created an employer and employee relationship between SEG and the Plaintiff and the class members for the purposes of the FLSA and the state minimum wage laws that are alleged in this complaint, such actions by Steiner also causing the violations of the FLSA and state law alleged in this complaint.

46.        Steiner, despite having the power to do so, did not direct SEG to discontinue the practices that are alleged to have created an employer and employee relationship between SEG and the Plaintiff and the class members for the purposes of the FLSA and the state minimum wage laws that are alleged in this complaint, such actions by Steiner also causing the violations of the FLSA and state law alleged in this complaint. Steiner failed to take such action because doing so would have diminished the profits of SEG and such diminishment of profits would have in turn diminished the financial returns enjoyed by Steiner from its ownership of SEG.

47.        Steiner was the chief, final, and active decision maker for SEG, meaning it made the decisions on how SEG would operate. As part of that decision making process, it decided that SEG would engage in the profit making personal services business alleged in this complaint and that such personal services business would use the uncompensated labor of persons who purchased educational services from SEG.

48.        Steiner, since the founding of SEG, has made a conscious decision to continue to operate SEG's profit making personal services business using the uncompensated labor of persons who purchased educational services from SEG.

49.        Steiner, prior to the occurrence of the events giving rise to the claims of the Plaintiff and the class members that are alleged in this complaint, made no attempt to ascertain whether SEG's use in its personal services business of the unpaid labor of the

class members was in compliance with the FLSA or the state minimum wage laws in the states where SEG operated.

50.        Steiner, prior to the occurrence of the injuries sustained by the Plaintiff and the class members, was made aware that the use of unpaid student labor by a private for profit school in a profit making personal services business might violate the FLSA. Steiner, despite that knowledge, made no attempt to change SEG's practice of using uncompensated student labor in a profit making personal services business.

51.        Steiner, prior to the occurrence of the injuries sustained by the Plaintiff and the class members that are alleged in this complaint, was made aware that the use of unpaid student labor by a private for profit school in a profit making personal services business either did violate the FLSA or had been found by at least one court to violate the FLSA. Steiner, despite that knowledge, made no attempt to change SEG's practice of using the uncompensated labor of purchasers of its educational services in a profit making personal services business.

52.        In light of the foregoing set of facts, Steiner is properly deemed an "employer" of the Plaintiff and the class members within the meaning of the FLSA and the state minimum wage laws alleged in that Steiner was acting as a decision making "agent of an employer" and was in complete control of SEG and the beneficial owner of SEG, with the power to implement, continue and/or terminate the illegal policies and practices that are alleged to have violated the FLSA and the state laws that are alleged in this complaint. Steiner not only was vested with such powers, but also knowingly exercised such powers to continue the violations of the FLSA and the state laws that are alleged in this complaint and/or they acquiesced to the continuation of such violations despite having the power and

duty to prevent and stop the same. In addition, because those intentional acts by Steiner that violated such statutes were also criminal acts, Steiner cannot escape civil liability for such actions by using the other Defendants to commit such acts.

FIRST CLAIM FOR RELIEF UNDER
THE FAIR LABOR STANDARDS ACT

53.     Plaintiff hereby incorporates each and every allegation contained in this Complaint above and realleges said allegations as though fully set forth herein.

54.     Pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 206 and § 207, the named Plaintiff and those similarly situated were entitled to at least the minimum hourly wage, which is currently $7.25 an hour, for each hour that they labored in Defendants' personal services business and in the event they worked more than 40 hours a week an overtime hourly wage of time and one-half such minimum hourly wage for all hours worked in excess of 40 hours per week.

55.     The named Plaintiff and those similarly situated were paid no monetary compensation whatsoever by the Defendants for performing labor for the Defendants as employees in the Defendants' personal services business, such failure to pay the Plaintiff and the class members any compensation whatsoever violating the minimum hourly wage requirements of 29 U.S.C. § 206 and, in the event any of the class members or Plaintiff ever worked in excess of 40 hours in a week, the overtime pay requirements of 29 U.S.C. § 207.

56.     Defendants aforesaid violations of the FLSA were willful in that Defendants were aware they were running a for profit personal services business and were treating the class members like employees and Defendants also were aware that employees of profit making personal services businesses are covered by the minimum hourly wage

requirements of the FLSA.

57.     The named Plaintiff on behalf of themselves and all other similarly situated persons who consent in writing to join this action, it also being proposed that all such persons be notified of this action through the dispatch of a written notice to the last known names and addresses of such persons that are set forth in the Defendants' records or that can otherwise be ascertained, seek, on this First Claim for Relief, a judgment for unpaid minimum wages and overtime wages and additional liquidated damages of 100% of any such unpaid wages, such sums to be determined based upon an accounting of the hours worked by the named Plaintiff and any such other persons who consent to join this action, and the Plaintiff also seek an award of attorney's fees, interest and costs as provided for by the FLSA.

SECOND CLAIM FOR RELIEF FOR DECLARATORY JUDGMENT INVALIDATING CERTAIN TERMS UNDER THE ARBITRATION AGREEMENT PLAINTIFF WERE REQUIRED TO ENTER INTO WITH DEFENDANTS

58.     Plaintiff hereby incorporates each and every allegation contained in this Complaint above and realleges said allegations as though fully set forth herein.

59.     Prior to admitting Plaintiff into their educational services business programs, Defendants required Plaintiff to enter into an Arbitration Agreement provision as part of an Enrollment Agreement, which Arbitration Agreement is attached hereto as Exhibit 1, and incorporated into this Complaint by this reference.

60.     Under the terms of that Arbitration Agreement Defendants required Plaintiff to agree, *inter alia*, to the following:

      a. Any dispute or claim between the Plaintiff and the Defendant(s) would be resolved through arbitration in accord with the Commercial Rules of the American Arbitration Association applying federal law;

b. No claims of more than one Plaintiff would be arbitrated or litigated jointly or consolidated with any other Plaintiff's claims;

c. Each Plaintiff would bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs;

61.      The above referenced provisions of the Arbitration Agreement violate the National Labor Relations Act ("NLRA" or the "Act"), 29 U.S.C. §§ 159, *et seq*., and specifically, §§ 7 and 8 of the Act by violating the rights of Plaintiff who were performing labor as the employees of the Defendants, all as described herein, to engage in concerted activities for mutual aid or protection in the nature of bringing a lawsuit in federal court in a collective and/or class action to make wage and hour-related claims under the FLSA and applicable state laws for payment of minimum wage and/or overtime for their labor provided.

62.      The above referenced provisions of the Defendants' Arbitration Agreement also violate §§ 7 and 8 of the Act by requiring Plaintiff to pay the added expenses for the services of an arbitrator and the added expenses associated with mandatory use of the American Arbitration Associations ("AAA") Commercial Rules, when the controversy includes only claims by the Plaintiff as employees laboring for the Defendants, which expenses the Plaintiff cannot afford to pay.

63.      The above referenced provisions of the Defendants' Arbitration Agreement are unenforceable because they contain fee and cost sharing obligations that place an impermissible burden on the Plaintiff to bear excessive financial expenses to vindicate her rights, which burdens the Plaintiff would not bear in such an action prosecuted within the federal courts.

## THIRD CLAIM FOR RELIEF UNDER STATE LAWS REQUIRING A MINIMUM HOURLY WAGE AND UNDER CERTAIN CIRCUMSTANCES AN OVERTIME WAGE

64.     Plaintiff hereby incorporate each and every allegation contained in this Complaint above and reallege said allegations as though fully set forth herein.

65.     The conduct alleged by the Defendants also constituted a violation of the laws of the states of Arizona, Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, New Jersey, Pennsylvania, and Washington that require the payment of minimum hourly wages and in some instances overtime wages of one and one-half times the minimum hourly wage, and that authorize civil suits to collect the same including, but not necessarily limited to, the following:

(a)     Arizona Statutes, §§ 23-363, 23-364 (Requiring payment of minimum hourly wages and providing for enforcement of that right through civil action);

(b)     Colorado Statutes Title 8, Article 6, and the Minimum Wage Order(s) issued thereunder, and Section 15 of Article XVIII of Colorado's Constitution providing for the payment of minimum wages;

(c)     Conn. Gen Stat. § 31-58 (setting forth minimum hourly wage rate); § 31-76c (imposing overtime wage rate requirement); § 31-68 (authorizing civil lawsuits by employees to collect minimum and overtime wages);

(d)     Florida Constitution Article X, Section 24, providing for the payment of minimum wages;

(e)     Illinois Compiled Statutes, 820 ILCS 105/1, *et seq.*, (from Ch. 48, par.1001, *et seq.*) establishing a minimum wage and authorizing rates pursuant to Public Act 94-1072 and collection thereof pursuant to the Illinois Wage Payment and Collection Act, 820 ILCS 115/15 *et seq.*

(e)     Maryland Labor and Employment Code § 3-413;

(f)     Massachusetts Statutes Chapter 151, § 1 (setting forth minimum hourly wage) §§ 1A and 1B; (requiring overtime wages and authorizing civil actions to collect the same); § 20 (authorizing civil actions to enforce minimum hourly wage claims);

(g)     Nevada Constitution Article 15, Section 16 and N.R.S. § 608.250 (granting right to a minimum wage and authorizing civil actions to enforce that right); 608.018 (granting right to overtime wages);

(h)     New Jersey Statutes Section 34:11-56a4;

(i)     Pennsylvania Statutes, Title 43, Chapter 8, Section 333.104;

(j)     Washington State Minimum Wage Act, Title 49, Chapter 49.46 of Washington Code, relevant provisions;

66.     Defendants' alleged conduct has deprived all of the class members who worked for the Defendants in the states of Arizona, Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, New Jersey, Pennsylvania, and Washington of the minimum wages and in some instances overtime wages owed to such class members pursuant to such states' laws.

67.     The named Plaintiff, on behalf of herself and the Plaintiff class, seek a judgment for all minimum wages, overtime wages, and liquidated damages and all other damages and monetary relief authorized by the state laws of Arizona, Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, New Jersey, Pennsylvania, and Washington for violations of such states' minimum wage or overtime wage payment requirements.

68.     The named Plaintiff, on behalf of herself and the Plaintiff class, also seek declaratory and equitable relief in the form of a declaration on the illegality of Defendants' practices and in the form of a suitable injunction restraining Defendants from continuing to violate the minimum wage and overtime wage payment requirements of the states of Arizona, Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, New Jersey, Pennsylvania, and Washington.

## FOURTH CLAIM FOR RELIEF UNDER
## STATE STATUTES REQUIRING THE PAYMENT
## OF EARNED AND UNPAID WAGES

69.        Plaintiff hereby incorporates each and every allegation contained in this

Complaint above and realleges said allegations as though fully set forth herein.

70.        The conduct of the Defendants, in failing to pay the minimum hourly wages

required by the FLSA and in certain circumstances the law of the state where class

members were working, has also violated the requirements of certain state statutes that

expressly require the payment of full and properly earned wages to employees, including,

but not necessarily limited to, the following:

(a)        Arizona Revised Statutes, §§ 23-351, 23-355, 23-353 (Requiring semi-monthly payment of wages, payment of wages to terminated employees, providing for statutory claim to recover triple the amount of any unpaid wages);

(b)        Colorado Statutes Title 8, Article 4, Sections 103 and 110 (Setting forth frequency of required payment of wages and authorizing civil actions to remedy violations);

(c)        Conn. Gen Stat. § 31-72 and the provisions of 31-71 including but not limited to 31-71b and 31-71c (providing for payment of wages weekly or upon termination and authorizing civil action to collect all unpaid wages with double damages and attorneys fees to be awarded);

(d)        Illinois Statutes Chapter 820, Section 115/11 et seq.;

(e)        Maryland Labor and Employment code § 3-507 and 3-502.

(f)  Massachusetts Statutes Chapter 149, § 148 (requiring regular payment of all earned wages) § 150 (specifying civil action authorized for violations of § 148 and award of triple damages);

(g)        Nevada Revised Statutes § 608.016 (requiring payment of wages for all time worked including during trial or break in periods); § 608.060 (requiring semi-monthly payment of wages); § 608.030, 608.020 (specifying immediate payment or payment within 3 days of all wages earned and unpaid by discharged or resigning employee);

(h)     New Jersey Statutes §34:11-4.2 and § 34:11-4.7;

(i)  Pennsylvania's Wage Payment and Collection Law, Title 43, Chapter 8, Section 43 of Pennsylvania Statutes, including 43 P.S. § 260.9a and its other applicable provisions;

(j)     Utah Code, Title 34, Chapter 28, relevant provisions including §§ 34-28-3, 34-28-5 (requiring payment of wages at least on a semimonthly basis and upon termination);

(k)     Washington Code, Title 49, Chapter 49.48, relevant provisions.

71.      Defendants' alleged conduct has deprived all of the class members who worked for the Defendants in the states of Arizona, Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, New Jersey, Pennsylvania, Utah and Washington of the wages Defendants were legally required to pay them pursuant to such states' laws.

72.      The named Plaintiff, on behalf of herself and the Plaintiff class, seeks a judgment for all wages and liquidated damages and all other damages and monetary relief authorized by the state laws of Arizona, Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, New Jersey, Pennsylvania, Utah and Washington as a result of Defendants' failure to pay the named Plaintiff and class members the wages defendant was legally required to pay them pursuant to such states' laws.

73.      The named Plaintiff, on behalf of herself and the Plaintiff class, also seeks equitable relief, in the form of declaratory relief and a suitable injunction restraining Defendants from continuing to fail to pay the wages of the class members, as required by the laws of Arizona, Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, New Jersey, Pennsylvania, Utah and Washington.

FIFTH CLAIM FOR RELIEF UNDER
STATE STATUTES IMPOSING PENALTIES OR

CONTINUING WAGE PAYMENT OBLIGATIONS

74.     Plaintiff hereby incorporates each and every allegation contained in this

Complaint above and realleges said allegations as though fully set forth herein.

75.     The conduct of the Defendants, in failing to pay the wages of the Plaintiff

and the class members as required by the laws of the states where certain class members

were working, has also made the Defendants become liable to such class members for the

payment of additional penalties provided for by statute and/or continuing wages to such

persons including, but not necessarily limited to, the following:

(a)     Arizona Revised Statutes, § 23-355 (providing for triple damages on unpaid
wage claims);

(b)     Colorado Statutes Title 8, Article 4, Section 109;

(c)     Conn. Gen Stat. § 31-72 and the provisions of 31-71 including but not
limited to 31-71b and 31-71c (providing for payment of wages weekly or upon termination
and authorizing civil action to collect all unpaid wages with double damages and attorneys
fees to be awarded);

(d)     Illinois Statutes Chapter 820, Sections 120/12(a) and 115/14(a) et seq.;

(e)     Maryland Labor and Employment code § 3-507.1(b);

(f)     Massachusetts Statutes Chapter 149, § 148 (requiring regular payment of all
earned wages) § 150 (specifying civil action authorized for violations of § 148 and award
of triple damages);

(g)     Nevada Revised Statutes § 608.040 (granting 30 days continuing wages to
employee not paid their earned wages within the time limit provided by statute upon
conclusion of their employment); Nevada Constitution Article 15, Section 16 (granting
right to a minimum wage and all other relief available at law);

(h)     Pennsylvania's Wage Payment and Collection Law, Title 43, Chapter 8,
Section 43 of Pennsylvania Statutes, including 43 P.S. § 260.10 and its other applicable
provisions;

(i)     Washington Code, Title 49, Chapter 49.52, relevant provisions including
Sec. 49.52.050 and 49.52.070;

76.     Defendants' alleged conduct, in failing to pay the class members who worked for the Defendants in the states of Arizona, Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, Pennsylvania and Washington the wages Defendants were legally required to pay them either under the laws of such states or the FLSA has given rise to a claim for monetary damages, in an amount in addition to such unpaid wages, pursuant to such states' laws.

77.     The named Plaintiff, on behalf of herself and the Plaintiff class, seeks a judgment for all damages and monetary relief authorized by the state laws of Arizona, Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, Pennsylvania and Washington as alleged in this claim for relief, the same arising as a result of Defendants' failure to pay the Plaintiff and the class members the wages Defendants were legally required to pay them pursuant to such states' laws or the FLSA.

NOW THEREFORE, Plaintiff prays for relief for herself and all class members as follows:

1.     Judgment against all Defendants for unpaid minimum wages and overtime wages and additional liquidated damages of 100% of any unpaid minimum wages and overtime wages pursuant to the FLSA along with an award of costs and attorney's fees;

2.     Judgment against all Defendants for unpaid minimum wages and overtime wages as required by the applicable state laws governing Defendants in the states where defendant employed the Plaintiff and the class members;

3.     Judgment against all Defendants for continuing wages and statutory penalties and damages as required by the applicable state laws governing Defendants in the states where Defendants employed the Plaintiff and the class members;

4.      Equitable, declaratory and injunctive relief including restitution and restraint of Defendants' actions in the future under applicable state laws;

5.      Costs, litigation expenses and disbursements, interest and reasonable attorney's fees; and

6.      Such further relief the court deems just and reasonable.

Dated this 7th day of April, 2014

s/David H. Miller
_____
David H. Miller
Leslie Krueger-Pagett
Sawaya & Miller Law Firm
1600 Ogden Street
Denver, Colorado 80218
(303) 839-1650 x 1090
DMiller@sawayalaw.com

Attorneys for Plaintiff

Address of Plaintiff:

3663 S. Sheridan Boulevard, #J2
Denver, Colorado 80235