IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:14-cv-00990-RBJ

RHONDA NESBITT, individually and on behalf of all others similarly situated,

      Plaintiff,

v.

FCNH, INC., VIRGINIA MASSAGE THERAPY, INC., MID-ATLANTIC
MASSAGE THERAPY, INC., STEINER EDUCATION GROUP, INC., STEINER
LEISURE LTD., SEG CORT LLC, doing business as the "Steiner Education Group,"

      Defendants.

---

**PLAINTIFF'S RESPONSE TO MOTION TO COMPEL ARBITRATION**

---

      Plaintiff Rhonda Nesbitt, individually and on behalf of all others similarly situated ("Plaintiffs"), by and through undersigned counsel, respectfully responds to Defendants' Motion to Compel Arbitration (Doc. 10), and requests that the Court deny such motion because the controlling law of this jurisdiction, along with a reading of the unambiguous terms of the "Arbitration Agreement" itself, and the facts set forth herein, make it clear that the Agreement is void as unconscionable and unenforceable against the Plaintiffs.

## INTRODUCTION

      Defendants ("SEG") run a for-profit educational services business at 32 campuses in some 14 states across the country. SEG represents itself as providing education in the areas of massage therapy and / or esthetics. Ms. Nesbitt attended one such program in the Denver, Colorado, area within the last three years, studying massage therapy. During her attendance she was required by Defendants to perform massage services for paying customers during weekend

"clinics" set up by Defendants. Clients paid money or other consideration to SEG for these services. Plaintiffs received no pay for giving the massages. Neither did Plaintiffs receive any instruction, training or meaningful monitoring by Defendants during these clinic times. During the clinics the students were prohibited from giving free massages. SEG charged $25.00 (or a certificate amounting to $25) per massage, and the students were required to perform 4-5 massages per clinic shift. [1] Each week that amounted to $100 to $125 worth of income for SEG per student. As SEG's own marketing materials make clear: over 150,000 massages were performed by SEG students per year; and that amounts to over $11,250,000 worth of profit-making income to SEG over a three year period. *See* Exhibit 2 (materials taken from SEG's own marketing materials and/or from its website showing that SEG's statements that its students perform "more than 150,000" clinic massages per year (at page 2, fourth bullet point) at $25 per massage (at page 3)).

Plaintiffs' claims are based on the premise that the SEG students' performance of massages during these clinics was compensable work, primarily performed for the profit and benefit of SEG, which, during those clinic times, was acting as Plaintiffs' employer under the Fair Labor Standards Act ("FLSA") and the Colorado Wage Act ("CWA"). Plaintiffs' position is that while SEG was requiring the Plaintiffs to perform work for the company, the students should have been paid the requisite minimum wage and accorded all rights and benefits under the FLSA and the CWA.

Defendants argue that Ms. Nesbitt signed an Arbitration Agreement as part of her enrollment process, and that such Arbitration Agreement is binding and requires her to arbitrate any and all of her claims, while precluding her from participating in a class action. While the

---

[1]     *See* Exhibit 1, Affidavit of Rhona Lynnae Nesbitt, at ¶¶ 1-5.

Plaintiffs acknowledge that the law generally recognizes a public policy in favor of honoring Arbitration Agreements under the Federal Arbitration Act ("FAA"), the Defendants have closed their eyes to the established law that applies in this case: That law first looks to what the Arbitration Agreement actually says, and whether the specific terms at issue are unconscionable, or otherwise unenforceable.

Controlling cases out of the federal district of Colorado and out of the Tenth Circuit, Court of Appeals, as well as from other federal jurisdictions, all support the Plaintiffs' position that the Arbitration Agreement is unconscionable and unenforceable for the reasons set out immediately below:

First, SEG mandated in the agreement that "[e]ach party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs."  Exhibit 1-A at 8, attached to Exhibit 1, Affidavit of Rhonda Lynnae Nesbitt.  This provision, on its face and as applied to Ms. Nesbitt, is unconscionable. The real world prejudice of subjecting Ms. Nesbitt to the liability for many thousands of dollars in such fees, costs and expenses would not be imposed if this matter were litigated in the federal courts. This is of critical importance to Ms. Nesbitt since the evidence presented along with this response will show that she is unable to afford such burdensome arbitration expenses.

Second, and related to the expenses assigned to Ms. Nesbitt by SEG in the Arbitration Agreement, is SEG's requirement that the "Arbitration shall be conducted in accordance with the Commercial Rules of the American Arbitration Association" ("AAA").  Those rules are impermissibly prejudicial to Ms. Nesbitt. They unconscionably impose excessive costs on Ms. Nesbitt which she cannot afford, whereas she would not have to sustain such expenses in judicial litigation.

Third, SEG chose not to include a savings clause or severability provision in the Arbitration Agreement it drafted (which, if included, might have allowed the Court to remedy the defective contractual agreement by modifying unconscionable or otherwise unenforceable terms—a power it does not have in the absence of such a provision).

Fourth, SEG drafted the Arbitration Agreement which, when measured against the accepted multi-part test used in this federal district, on balance, fails the general test of whether it is conscionable and may be enforced against the Plaintiffs.

Fifth, Defendants' Arbitration Agreement impermissibly goes too far, in that it 1) is so broadly stated as to make reasonable people believe that it prevents them from filing a charge before the National Labor Relations Board ("NLRB"); and 2) prevents Plaintiffs from exercising their statutorily granted rights under Sections 7 and 8 (a)(1) of the National Labor Relations Act ("NLRA") and under Section 216(b) of the Fair Labor Standards Act ("FLSA") to engage with others in protected concerted activity by bringing a collective and class action. While, admittedly, the ultimate result of this latter claim is uncertain at best, given the current state of the case law, the matter has not been ultimately resolved by the United States Supreme Court. In the meantime, the NLRB—an Executive Branch Agency—has the independent power to enforce the law as it deems proper. It has made it completely clear by its decision in *D.R. Horton, Inc.,* 357 NLRB No. 184 (2012), *overruled*, 737 F.3d 344 (5th Cir. 2013) (deadline for filing petition for certiorari review still pending), that the NLRA (and the FLSA) support the Plaintiffs' claims in front of their agency, and provides support to those claims before this court.

## I.  ADDITIONAL UNDISPUTED MATERIAL FACTS

In addition to the facts stated in Defendants' Motion to Compel, the following facts are true:

4

1)      Before being allowed to attend DSMT, Ms. Nesbitt was required to complete the school's Enrollment Agreement, the typewritten parts of which were drafted by SEG. A copy of that document is attached as Exhibit 1-A.[2]

2)      Contained within the Enrollment Agreement was the Arbitration Agreement at issue in this proceeding, and which appeared as part of a section entitled "Student Acknowledgments." *Id.* at 8.

3.      In the Arbitration Agreement section of the Student Acknowledgments there was not any place for Ms. Nesbitt to sign or initial the document, but in all other sections of the Student Acknowledgments her initials were required.  *Id.*

4.      Ms. Nesbitt had to complete and sign the Enrollment Agreement before she could meet with the school's financial aid advisors, and she was not allowed to review the Enrollment Agreement until she was going through the enrollment process, itself.  Exhibit 1, Affidavit of Rhonda Lynnae Nesbitt at ¶¶ 6-10.

## II.      THE TERMS OF THE ARBITRATION AGREEMENT ARE UNCONSCIONABLE AND UNENFORCEABLE AGAINST THE PLAINTIFFS

Defendants devote 3 pages of their Motion generally arguing that the FAA, along with cases applying it, controls the outcome of this arbitration dispute and that under the FAA there is "no place for the exercise of discretion by a district court" other than to "direct the parties to arbitration." Defendants' Motion to Compel Arbitration (Doc. 10) at 5-7.

In a situation reminiscent of *Bleak House,* the Tenth Circuit recently mused that:

---

[2]      Ms. Nesbitt has been unable to find a copy of her own fully filled out Enrollment Agreement (which, undoubtedly, is in the possession of the Defendants). However, she remembers that what she filled out was, to her best recollection and belief, identical to the form attached in Exhibit 1-A—but filled out with her information, signature and initials in the same way Exhibit 1-A was completed. *See* Exhibit 1, Affidavit of Rhonda Lynnae Nesbitt at ¶ 19.

"Everyone knows the Federal Arbitration Act favors arbitration." That, however, does not answer the questions presented here, and SEG jumps much too quickly, and without support, to its conclusion.[3]

The leading case in this circuit, under circumstances generally involving the issues raised now before the court, is *Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999). Defendants do not discuss that case.

In *Shankle* the Tenth Circuit was faced with a case where the employer argued that the dispute had to be referred to arbitration. The arbitration agreement at issue—like the one in this case—required the employee to pay a portion of the arbitrator's fees and expenses. The court noted the clear U.S. Supreme Court-mandated presumption in favor of enforcing agreements to arbitrate under the FAA, but held that such presumption was "not without limits." *Shankle,* 163 F.3d at 1234:

> [A]rbitration of statutory claims works because potential litigants have an adequate forum in which to resolve their statutory claims and because the broader social purposes behind the statute are adhered to. This supposition falls apart, however, if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights.

*Id.*, citations omitted.

The *Shankle* court held that the arbitration agreement's terms which required the plaintiff to pay one-half of the arbitration expenses that he could not afford, and which would not be incurred in a judicial setting, failed to provide an accessible forum in which he could resolve his statutory (anti-discrimination) rights. *Id.* at 1235. The agreement to arbitrate was voided as

---

[3]      While its not clear from their brief, to the extent that SEG is arguing that the enforceability of the Arbitration Agreement should be decided by an Arbitrator instead of the court, it is wrong. *Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230, 1235 (10th Cir. 1999). *See, Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, (10th Cir. 1994).1486-1488. *See also, Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* 473 U.S. 614, 628 (1985).

unconscionable. *Id.* at 1233-1235.[4]  As shown within, the terms in SEG's Arbitration Agreement

in this case are much more burdensome and expensive to the Plaintiff than was the agreement

that was voided in the *Shankle* case.

It is true that much judicial water has flowed under the Arbitration Agreement bridge

since the Tenth Circuit decided *Shankle*. But none of those decisions, including the ones relied

on by Defendants—from *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79 (2000), to *AT&T*

*Mobility v. Conception,* 563 U.S. ___, 131 S.Ct. 1740 (2011)—contradict or in any way call into

question the rule that even the Defendants are forced to acknowledge: "An arbitration agreement

is not enforceable if it is unconscionable." Defendants' Motion to Compel (Doc. 10) at 8 (citing

this court's opinion in *Vernon v. Qwest Communications Int'l, Inc.*, 925 F.Supp.2d 1185, 1994

(D. Colo. 2013) and *Weller v. HSBC Mortgage Servs., Inc.* 971 F.Supp.2d 1072, 1079 (D. Colo.

2013)).

Those cases and others will be discussed below, but the bottom line is that—even under

the most recent cases in this judicial district and circuit—SEG's Arbitration Agreement is

unconscionable and unenforceable as a matter of law, and as applied in this case.

---

[4]    The *Shankle* court acknowledged that the "typical employment case averages between fifteen to forty hours of arbitrator time. *Shankle,* 163 F.3d at 1234, n.5 (citing *Cole v. Burns Int'l Sec. Serv.,* 105 F.3d 1465, 1485 (D.C. Cir. 1997). Not including fees, arbitration filing charges or other arbitration costs, the arbitrator time, alone, would have cost Mr. Shankle between $1,875 and $5,000. *Shankle,* 163 F.3d at 1234. The court also held that even if the arbitrator had the power to shift fees or expenses in arbitration, it was "unlikely that an employee in Mr. Shankle's position, faced with the mere possibility of being reimbursed for arbitrator fees in the future, would risk advancing those fees in order to access the arbitral forum. Because the Agreement does not actually shift responsibility for payment of fees based on ability to pay, fee shifting does not affect our analysis on this case." *Shankle,* 163 F.3d at 1234, n.4.

7

**A.      SEG's Arbitration Agreement Is Unconscionable and Unenforceable**

**1.      The legal standard for unconscionability.**

Defendants cite to the case of *Bernal v. Burnett,* 792 F.Supp.2d 1280 (D.Colo. 2011), for

what they say is the general argument that courts "routinely enforce arbitration agreements

arising in the student/educational institute context." Motion to Compel (Doc. 10) at 7.  That is

not the message of *Bernal.* While the court in *Bernal* did hold that the specific arbitration

agreement between students and their school in that case was enforceable, that result has no

import here. Arbitration is a matter of contract, and whether a contract is unconscionable is a

matter of law entirely dependent on the terms of that individual contract. *Bernal,* 793 F.Supp.2d

at 1284, *citing Mullan v. Quickie Aircraft Corp.,* 797 F.2d 845, 850 (10th Cir. 1986).

The *actual* import of *Bernal* is that it sets out a post-*AT&T Mobility LLC v. Concepcion*

roadmap that the courts should follow in answering the question of whether any particular

arbitration agreement is unconscionable or unenforceable. *See, Bernal,* 793 F.Supp.2d at 1285-

1289.

*Bernal* was soon followed by a decision out of the same Colorado federal district court

examining the terms of yet another agreement that mandated arbitration; this time in the

employment context. *Daugherty v. Encana Oil & Gas (USA), Inc.,* 2011 WL 2791338 (No. 10-

cv-02272, July 15, 2011). The *Daugherty* arbitration agreement included a provision that said

that the "prevailing party shall be entitled to recover its reasonable attorneys' fees." *Id.* at 3. In

that opinion, the court fleshed out and applied the approach set out in *Bernal*, relying heavily on

the controlling *Shankle* case, referenced above.[5]

---

[5]      As discussed below, the court made it clear that it would have voided the arbitration
clause if there was not a severability clause in the agreement. *Daugherty,* 2011 WL 2791338 at
12-13. The SEG Arbitration Agreement contains a similar, but even more monetarily

8

*Bernal* and *Daugherty* both recognize that one of the legal grounds for revoking a contract is that it is unconscionable. *Bernal,* 793 F.Supp.2d at 1285; *Daugherty,* 2011 WL 2791338 at 7. If an arbitration clause is contained in a contract and is found by the court to be unconscionable, the arbitration clause may be removed from the contract. *Id.,* with both decisions citing to *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445 (2006).

To defeat SEG's motion to compel arbitration "Plaintiffs must show that the Arbitration Agreement itself—and not the contract in general—is unconscionable and, therefore, unenforceable." *Bernal,* 793 F.Supp.2d at 1285; and *Daugherty,* 2011 WL 2791338 at 7 (both citing to *Rent-A-Center, West, Inc. v. Jackson,* 130 S.Ct. 2772, 2778, 177 L.Ed.2d 403 (2010)).

Both *Bernal* and *Dauugherty* use the same language in setting out the factors that should be used when addressing the issue of whether an arbitration clause is unconscionable. They are virtually identical to the factors later adopted and set out in this court's decision in the more recent case of *Vernon v. Qwest Communications Int'l, Inc.* 925 F.Supp.2d 1185, 1194-1195 (D. Colo. 2013). *See also, Weller v. HSBC Mortgage Servs., Inc*. 971 F.Supp.2d 1072, 1079 (D. Colo. 2013). Those factors come from the Colorado case of *Davis v. M.L.G. Corp.,* 712 P.2d 985, 991 (Colo. 1986). *Id. See Bernal,* 793 F. Supp.2d at 1286; *Daugherty,* 2011 WL 2791338 at 8; *Vernon,* 925 F.Supp.2d at 1194-1195.

The *Bernal* court held that Colorado's *Davis*-based test for unconscionability does not explicitly disfavor arbitration, and so there is no reason why *Davis* should not still be considered good law after the Supreme Court's decision in *Concepcion. Bernal,* 793 F.Supp.2d at 1287. *See, Daugherty,* 2011 WL2791338 at 9.  In all of these cases the courts have agreed that Colorado state law controls on the issue of whether the agreement is conscionable, *vel non.*

---

burdensome provision, *and there is no severability clause anywhere in the SEG Enrollment Agreement, including in its Arbitration Agreement.*

Plaintiffs' first four arguments set out above in the Introduction section (pages 3-4, *supra*) that assert SEG's Arbitration Clause is unconscionable should be reviewed by this court under that seven factor analysis that has now been regularly adopted by the Colorado federal district court bench. Those factors are examined immediately below. They require the court to consider whether the arbitration agreement was:

**1)      a standardized agreement executed by parties of unequal bargaining power.**

The Defendants fail to address this issue directly.  What is clear is that when Ms. Nesbitt went to enroll at DSMT, and was in the middle of going through the process, she was simply presented an Enrollment Agreement drafted by SEG on their standardized form that she was not able to negotiate and had to sign if she wanted to continue. Exhibit 1, Affidavit of Rhonda Lynnae Nesbitt, ¶¶ 6-10; *See* Exhibit 1-A attached to Exhibit 1, SEG Enrollment Agreement at 8.

Plaintiffs acknowledge—especially after the Supreme Court's decision in *Concepcion*— that SEG's use of its own SEG-drafted agreement under adhesive terms, standing alone, is not enough to prove that the Arbitration Agreement is unconscionable.   *Concepcion,* 131 S.Ct. 1750; *Vernon,* 925 F.Supp.2d at 1195. Nonetheless, it is a step in that direction.

**2)      lack of an opportunity to read or become familiar with the document before signing it.**

Ms. Nesbitt was not given a chance to review the contract before going through the enrollment process; and was not shown the arbitration clause in advance.  Nor was it pointed out to her or explained. And she did not notice or appreciate it before she signed the Enrollment Agreement. It was simply part of the nine page single-spaced Enrollment Agreement she had to complete to finish the application process. Significantly, as explained below in subsection 4), the Arbitration Agreement did not contain a place for her initial or signature line, as did all the other

parts of the Student Acknowledgments. Exhibit 1, Affidavit of Rhonda Lynnae Nesbitt ¶¶ 6-10.

Exhibit 1-A at 8.

        **3)**       **use of fine print in the portion of the contract containing the provision.**

Defendants baldly state, without support, and in contradiction to the actual physical

appearance of the document, that the Arbitration Agreement is "conspicuous, direct, and

procedurally sound." Plaintiffs disagree.  In making its argument to the court, SEG types out the

entirety of the Arbitration Agreement and does not present the original document to the court.

Defendants' Motion to Compel (Doc. 10) at 3-4. Plaintiffs' Exhibit 1-A at 8 shows the court the

actual appearance of the Arbitration Agreement; not the sanitized 12 point Times New Roman

rendition of the text.

As the court can see, it is not conspicuous, direct or procedurally sound.  The Arbitration

Agreement is set out in one run-on paragraph. Its first sentence goes on for fifteen single-spaced

lines, has 5 numbered subsections and multiple parenthetical clauses. What takes up an entire

page in Defendants' Motion is set in type small enough so that it takes not quite one full column

in the Enrollment Agreement. *Compare* Plaintiffs' Exhibit 1-A at 8 *with* Defendants' Motion to

Compel (Doc. 10) at 3-4.

        **4)**       **absence of evidence that the provision was commercially reasonable**

Defendants never point to any evidence that the Arbitration Agreement was

"commercially reasonable."  They declare it so, but offer no legal support or directed argument,

aside from noting that a part of the Arbitration Agreement is in capital letters and there is a

provision at the very end of the single-spaced-full-page-long[6] Arbitration Agreement that allows

the Plaintiffs to reject that part of the Enrollment Agreement if they send in a written rejection

---

[6]      "Full-column-long" in the actual document itself, where the type is approximately half
the size as is typed out in Defendants' Motion.

notice contained certain information to a certain address within 30 days of the signing of the

Enrollment Agreement. *See,* Defendants' Motion to Compel (Doc. 10) at 4, 9-10.

Those two facts are correct—for what they are worth—but the actual document shows

that the capitalized letters and the limited right to reject are buried after more than 30 single-

spaced lines in one long paragraph. They appear in the *only* part of the Student

Acknowledgments section that does *not* require the initials of the applicant. Exhibit 1-A at 8.

That placement intentionally draws every reader's attention away from the only provision—the

Arbitration Agreement—that does not have to be approved by the applicant's signature or initials

in that section. Common sense argues that the provisions in the Enrollment Agreement that

require signatures or initials will draw an applicant's attention much more than a companion

provision that runs on for over 40 single-spaced lines that does not require a signature or initials.

Additionally, Plaintiffs note that not only did the Arbitration Agreement lack a line for

the applicant's initials or signature, but it did not appear in a separate document, as did the

agreement in the *Bernal* case. *See Bernal,* 793 F.Supp.2d at 1288. More importantly, as

described below, it contained terms that when applied in the context of Plaintiffs' FLSA and

CWA case are not only unreasonable, *see, id.,* but are unconscionable.

**5)      the terms of the contract**

This factor is the key that opens the lock the rest of the way in favor of the Plaintiffs.  In

the context of the seven-factor test, two unconscionable provisions are buried within the lengthy

Arbitration Agreement. Appearing in the second sentence of the Arbitration Agreement that

starts 16 single-spaced lines down the page is the following sentence:

> Arbitration shall be conducted in accordance with the Commercial Rules of the American
> Arbitration Association applying federal law to the fullest extent possible, and the
> substantive and procedural provisions of the Federal Arbitration Act (9 U.S.C. §§ 1-16)
> shall govern this Arbitration Agreement and any and all issues relating to the

enforcement of the Arbitration Agreement and the arbitrability of the claims between the parties.

Exhibit 1-A at 8.

Later in the provision the following sentence appears: "Each party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs." *Id.*

The effect of these two sentences results in an unconscionable situation where Ms. Nesbitt will be subject to paying many thousands of dollars in arbitration-related fees. These are costs and expenses that she would not be subject to paying in the judicial setting. Additionally, under SEG's language, she will not be able to take advantage of the substantive provision of the FLSA under which SEG would pay *her* attorneys' fees and costs if she is successful. 29 U.S.C. § 216(b).

This case substantially differs from *Bernal,* in part, because there the parties were arguing within the context of a commercial setting and the AAA Commercial Rules accordingly were appropriate. More importantly, the Plaintiffs did not appear to object to their application. *See Bernal,* 793 F.Supp.2d at 1283.

In this case, Plaintiffs bring their claims under the FLSA and CWA, alleging that they were treated as employees in an employment context. However, by the terms of SEG's Arbitration Agreement, the AAA Employment Rules will not be used. Rather, by SEG's specific designation, the AAA's Commercial Rules will be applied.  Sections R-53, R-54 and R-55 of the AAA Commercial Rules sets out the fees, costs and expenses assigned within the Commercial Rules context. *Commercial Arbitration Rules and Mediation Procedures*, American Arbitration Association, Rules amended and effective October 1, 2013, and Fee Schedule amended and effective June 1, 2010:

https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103.  (Hereinafter,

"Commercial Rules").

Because SEG's Arbitration Agreement designates the application of the Commercial

Rules, those rules apply; but they apply as modified by SEG's language in the Arbitration

Agreement. *Id.*, Commercial Rules at 10, R-1(a) ("The parties, by written agreement, may vary

the procedures set forth in these rules").

Even in an individual party's case, Ms. Nesbitt would have to pay a filing fee to the AAA

of  $775, and when the case goes to hearing, another $200.  Commercial Rules at 10, R-53[7], and

Fee Schedule at 40,  Then she will have to pay all of her own costs associated with the

arbitration—such as potentially thousands of dollars in deposition or discovery charges, witness

travel expenses, hearing preparation expenses, etc. Whether those expenses are open to any

reduction by the exercise of the arbitrator's discretion is not clear. *Compare* Exhibit 1-A at 8

*with* R-54 ("All other expenses of the arbitration, including required travel and other expenses of

the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the

direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise

or unless the arbitrator in the award assesses such expenses or any part thereof against any

specified party or parties").

These fees and expenses, however, do *not* end there. Under the Commercial Rules and

the agreement of the parties, Ms. Nesbitt would additionally have to pay hundreds of dollars for

the costs of the room in which the arbitration would be heard. AAA Fee Schedule for

---

[7]      Under R-53: "The AAA may, in the event of extreme hardship on the part of any party,
defer or reduce the administrative fees." However, because SEG's arbitration language requires
the parties to pay their own expenses and costs, it is questionable whether and to what extent the
arbitrator retains any discretion about such allocations. *See,* Exhibit 1-A at 8.

Commercial Rules, amended and effective June 1, 2010:

https://www.adr.org/aaa/ShowPDF?doc=ADRSTG_004102 at 5.

      Most importantly, she would have to split with SEG the arbitrator's hourly compensation fee at a rate set by the arbitrator, or if the parties disagree with the stated rate, at such rate set by the AAA. *Id.* at R-55. Nowhere in the Commercial Rules or applicable fee schedules is the average arbitrator's hourly or daily rate set out. And the AAA refuses to give out directly any information about what such a fee might be.[8] Accordingly, legal research concerning what such fees have been before is instructive.

      On average, a labor-related dispute requires approximately fifteen to forty hours of arbitrator time*, Shankle*, 163 F.3d at 1235 n. 5; and arbitrators' fees average $250 to $600 per hour. *Cole v. Burns Int'l Sec. Servs*., 105 F.3d 1465, 1481 n. 8 (D.C. Cir. 1997) (cited approvingly in *Shankle*, 163 F.3d at 1235).[9] Ms. Nesbitt, then, is likely to incur between $2,320.50 and $12,487.50, plus such discovery, witness and room rental costs in arbitration-related expenses that she would avoid by litigating her claims in federal court.[10]

---

[8]      Exhibit 3, Affidavit of Leslie K. Pagett, attached hereto at ¶¶ 1-6.

[9]      As the court said in *Cole, m*ore than 15 years ago, the AAA reported that "$700 per day as the average arbitrator's fee. Kenneth May, *Labor Lawyers at ABA Session Debate Role of American Arbitration Association,* DAILY LAB. REP. (BNA) No. 31, at A–12 (Feb. 15, 1996). JAMS/Endispute arbitrators charge an average of $400 *per hour. See* Alleyne, 13 HOFSTRA LAB. L.J. at 410 n.189. However, fees of $500 or $600 per hour are not uncommon. *See* Margaret A. Jacobs, *Renting Justice: Retired Judges Seize Rising Role in Settling Disputes in California,* WALL ST. J. , July 27, 1996, at A1; David Segal, *Have Name Recognition, Will Mediate Disputes,* WASH. POSTT, Dec. 16, 1996, Wash. Bus. at 5. CPR Institute for Dispute Resolution estimates arbitrators' fees of $250–$350 per hour and 15–40 hours of arbitrator time in a typical employment case, for total arbitrators' fees of $3,750 to $14,000 in an "average" case. *See* CPR INST. FOR DISPUTE RESOLUTION, EMPLOYMENT ADR: A DISPUTE RESOLUTION PROGRAM FOR CORPORATE EMPLOYERS I–13 (1995)." *Cole,* 105 F.3d 1465, 1481 n. 8.

[10]     The AAA filing fees for individual claims up to $10,000 is $775 for the initial filing fee and $200 more when the matter goes into hearing. Commercial Rules, R-53. Under *Shankle* and

Most prejudicially, however, the Ms. Nesbitt will have to pay her own attorneys fees and by the explicit terms of the SEG Arbitration Agreement will not be able to take advantage of the statutory remedies of the FLSA to have SEG pay her reasonable attorneys' fees and costs if she is successful in the case. *Compare* SEG Arbitration Agreement ("Each party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs") *with* Section 216(b) of the FLSA: "The court in such action [under the FLSA] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

In *Daugherty* the court found a similar—but slightly different—arbitration agreement provision to be unconscionable:

> The Court finds that these two provisions [application of the Commercial Arbitration Rules in an employment case, and a fee shifting provision inconsistent with the FLSA] are unenforceable. First, the requirement that arbitration of issues arising out of the [arbitration agreements] follow the Commercial Rules of the AAA would require Plaintiff to be assessed one-half of the total costs of arbitration, including the fees of the arbitrator. The Plaintiffs' affidavits establish clearly that they cannot afford these forum costs. Enforcement of this provision would, therefore, effectively preclude them from pursuing their claims. *Shankle*, 163 F.3d at 1235.

> Second, by providing for an award of attorneys' fees to the prevailing party, instead of a prevailing *plaintiff*, this clause in the arbitration agreement substantially thwarts the statutory enforcement scheme erected by the FLSA . . . the chilling effect of this fee-shifting provision on Plaintiffs' ability and willingness to attempt to press their claims under the FLSA is clear.

---

*Cole,* a minimum of 15 hours of arbitrator time at $250 per hour is $3,750 and a maximum of 40 hours at $600 per hour is $24,000. Plaintiffs" calculations are based on at least 15 hours of arbitrator-time at $250 per hour and at most 40 hours at $600 per hour. This provides the range of likely arbitration expenses from lowest (15 hours at $250 per hour + $975 filing fee = $4,725) to highest (40 hours at $600 per hour + $975 filing fee = $24,975). Even if this number is split in half, Ms. Nesbitt's costs are between $2,320.50 and $12,487.50. These amounts do not include *anything* for the costs of any discovery, witness fees, room rental, and associated arbitration expenses.

2011 WL2791338 at 11.

In this case, Ms. Nesbitt's affidavit likewise supports the court's finding that she would not be able to afford the costs of arbitration for which she will be responsible. Ms. Nesbitt is employed as a massage therapist where her average compensation barely meets her basic living and work expenses, leaving her with less than $170 a month, which is not enough to pay her already-accumulated medical bills and business-related expenses, let provide any help to her son and granddaughter. *See* Exhibit 1, Affidavit of Rhonda Lynnae Nesbitt, ¶¶ 13-18.

While under the SEG Arbitration Agreement the Plaintiff will not have to pay SEG's attorney's fees if it prevails, nevertheless, the SEG language still directly thwarts the public attorneys general scheme of the FLSA and requires Ms. Nesbitt to pay her own attorneys' fees, whether she wins or losses the case. Exhibit 1-A at 8. Ms. Nesbitt's above-referenced Affidavit demonstrates she has no ability to pay any such fees.

The closest cases on point are *Shankle, Perez, Gourley* and *Daugherty.* In *Shankle* the Arbitration Agreement at issue required the plaintiff "to pay one-half of the arbitrator's fees" (which the court held would amount to between $1,875 and $5,000 in pre-1999 dollars), but Mr. Shankle could not afford that fee and the court concluded that it was unlikely that others similarly situated could, either. *Shankle,* 163 F.3d at 1234-1235. In striking down the Arbitration Agreement as unconscionable, the court said:

> The [Arbitration] Agreement thus placed Mr. Shankle between the proverbial rock and a hard place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum. *See Cole [v. Burns Int'l Sec. Serv.]* 105 F.3d at 1484 (concluding employees would be unable to pursue statutory claims if required to pay for arbitrator fees in addition to the administrative costs and attorney fees, which accompany both arbitration and litigation).

*Id.* at 1235.

*Daugherty* also shows why SEG's Arbitration Agreement is unconscionable. As the court said in that opinion:

> *Shankle* set the standard in this Circuit that an arbitration agreement requiring a plaintiff to share in the costs of arbitration is unenforceable when the agreement effectively deprives the plaintiff of an accessible forum to resolve his statutory claim and vindicate his statutory rights.

*Daugherty,* 2011 WL 2791338 at 10.

*Perez* is even closer on point in that there each side had to bear its own arbitration expenses and legal expenditures. *Perez v. Hospitality Ventures—Denver LLC,* 245 F.Supp.2d 1172, 1173-1174 (D.Colo. 2003) (unconscionable arbitration agreement because of prejudicial cost and fee splitting provision cannot be modified because it does not contain savings or severability clause); *Gourley v. Yellow Transp*., 178 F.Supp.2d 1196, 1204 (D.Colo. 2001) (arbitration fee and cost sharing provisions unconscionable and no savings clause).

*Daugherty,* this court's own case, is a case where the arbitration agreement raised both arbitration expense as well as attorneys' fees issues. However, in *Daugherty*, the arbitration agreement contained a savings or severability clause. The court therefore relied on the case of *Fuller v. Pep Boys—Manny, Moe & Jack of Del., Inc*., 88 F.Supp.2d 1158, 1162 (D.Colo. 2000), among others, to modify the arbitration clause to eliminate the offensive fees and expenses provisions from the agreement. *Daugherty,* 2011WL2791338 at 12.

More to the point, for the case now before the court, the *Daugherty* court went on to say:

> [W]here a contract contains a void arbitration provision, it must either be deemed unenforceable where there is no savings clause to the contract or, in keeping with the presumption in favor of arbitrability in the case of a contract with a savings clause, the void language may be stricken and the arbitration agreement otherwise enforced. Here, as discussed previously, the [arbitration agreements] do in fact include a severability or savings clause. The offending provisions will therefore be stricken, and the remaining terms of the arbitration agreement will be given effect.

*Id.*

What distinguishes this case from *Daugherty* and *Fuller*, however, and what is the deciding factor in this case, is that there is no savings or severability clause in either the SEG Enrollment Agreement, or—more specifically—anywhere within the Arbitration Agreement. Exhibit 1-A, *passim*, and at 8.  Accordingly, the Arbitration Agreement must be voided as being unconscionable.

Directly on point  is the Colorado federal district court's decision in *Gourley v. Yellow Trans., LLC*, 178 F.Supp.2d 1196, 2001). There, the court ruled that it had no choice but to void the arbitration agreement given its offensive cost-sharing provision because the plaintiffs could not afford the costs of arbitration and there was no severability clause in the agreement which would allow the court to enforce the arbitration agreement without the offending terms. *Id.* at 1203-1204.  In *Gourley* the defendant company volunteered to remedy the offending provisions of the arbitration agreement by foregoing the unconscionable provisions, but the court refused, noting that the controlling terms of the agreement did not contain a severability clause. That is the identical situation that appears in this case, given the language of SEG's agreements.

*Gourley* grew out of the controlling case of *Shankle*. And *Shankle,* like *Gourley,* makes it clear that in the absence of a savings or severability clause, the court lacks the authority to substitute its decision making power for that of the parties to re-write the terms of a contract. *Shankle,* 163 F.3d at 1235, n.6. ("The Agreement clearly makes the employee responsible for one-half of the arbitrator's fees and we are not at liberty to interpret it otherwise. *See Awbrey v. Pennzoil Co.*, 961 F.2d 928, 930 (10th Cir. 1992) ("A court is without authority to alter or amend contract terms and provisions absent an ambiguity in the contract.")).

The rule that if there is no savings or severability clause then the court must void an unconscionable arbitration agreement, instead of being able to simply eliminate the offensive terms, is the controlling law in the Tenth Circuit. *See also, Perez v. Hospitality Venures—Denver*

19

*LLC,* 245 F.Supp.2d 1172, 1174 (D.Colo. 2003) ("the alleged agreement does not, however, contain a severability or savings clause that allows me to enforce the agreement by striking unenforceable terms.") (citations omitted).

Defendants point to the cases of *Green Tree Fin. Corp—Ala. v. Randolph,* 531 U.S. 79, 82 (2000) and *Hickey v. Brinker Int'l Payroll Co., L.P.,* 2014 2014 WL 622883 at 3, to argue that simply having a costs and/or fee sharing provision does not invalidate an arbitration agreement. SEG stretches the holdings in those cases beyond what they will bear. After the Supreme Court's in decision in *Green Tree,* the court's attention should include consideration of the *actual ability* of the plaintiff to pay. However, in the case now before the court neither *Green Tree* nor *Hickey* provide SEG any meaningful support:

> At most . . . *Green Tree* stands for the proposition that the employee must demonstrate that under the arbitration agreement, she was likely to incur substantial fees and costs that would prevent her from vindicating federal statutory rights. The Court held the employee in *Green Tree* had not carried this burden because the arbitration agreement did not state who was to bear arbitration costs and because the employee failed to make a factual showing that she was likely to incur prohibitive expenses. Neither circumstance is present in this case, as the alleged arbitration agreement provides for Perez to bear half of the arbitration costs and Perez has presented affidavit and other evidence demonstrating she cannot afford these costs, which she would not incur in a judicial forum.

*Perez,* 245 F.Supp.2d 1172, 1173 (D. Colo. 2003).

Given the detailed factual information set out about the costs and (lack of) ability that Ms. Nesbitt has to be able to afford the terms of arbitration mandated by SEG, and given the lack of a savings or severability clause, the case now before the court is the same as *Gourley* and *Perez,* and materially different than *Green Tree* or *Hickey.*[11]

---

[11]      *Hickey* is currently on appeal, and at most only applies the *Green Tree* rule to the facts of that case but does not change the underlying law described above—and particularly the law as set out under the decisions in *Gourley, Perez and Daugherty. Hickey v. Brinker Int'l Payroll Co., L.P.,* 2014 WL 622883 (Doc. 47) (No. 13-cv-951, March 20, 2014, Notice of Appeal.

**6)     the relationship of the parties, including factors of assent, unfair surprise, and notice.**

While taking into consideration all of the ways in which the formation of the contract was burdened with elements oppressive to Ms. Nesbitt (see subsections 1 - 4, above), Ms. Nesbitt did sign the Enrollment Agreement, and whether she was rushed through the process or not, she does not testify that she was prohibited from reading the lengthy small type-written Enrollment Agreement after it was provided to her—aside from the fact that she does not remembers it now. Exhibit 1 at ¶ 6. In sum, though, given all of the factors, while this element may not be strongly favorable to Ms. Nesbitt, it certainly does not heavily weigh on SEG's side.

**7)     all the circumstances surrounding the formation of the contract.**

As the court noted in *Vernon*, "this element is a catchall that allows for consideration of all of the factors surrounding formation of the contract." *Id.* at 1195. Accordingly, this factor essentially asks the court to balance the six previously described factors to come to a general ruling as to whether the agreement was conscionable. Plaintiffs will not repeat the facts and arguments set out above. Under the law and facts of this case, as demonstrated above, Plaintiffs assert that they have prevailed on factors 1-5, and that the parties are nearly equally split on factor 6, and so Plaintiffs should prevail on this general balancing of factors.

That, however, is simply one lens through which the issues in this case may be viewed, and Factor 7—the general balancing test—is not the only lens that should be focused on these issues. If the terms of the Arbitration Agreement under Factor 5 are found to be offensive, or if the court concludes that any one factor outweighs the rest, then under that analyst, too, the Arbitration Agreement should be voided. *Vernon,* 925 F.Supp.2d at 1195. Plaintiffs argue that the clearest grounds for finding the Arbitration Agreement unconscionable are found in the

expense shifting and fees provisions of the Arbitration Agreement. Those impediments to

vindicating her rights are not only substantial, they are dispositive in her favor.

III.   **THE TERMS OF SEG'S  ARBITRATION AGREEMENT GO TOO FAR AND INTERFERE WITH PLAINTIFFS' RIGHT TO 1) FILE A CHARGE BEFORE THE NLRB; AND 2) ENGAGE IN PROTECTED CONCERTED ACTIVITY BY JOINING WITH OTHERS TO ASSERT THEIR RIGHTS IN A CLASS OR COLLECTIVE ACTION**

SEG's Arbitration Agreement is so broadly and improperly stated that it would lead a

reasonable person to believe that it prevented them from filing a charge before the NLRB.

Because there is no savings or severability clause, the court must void the agreement. SEG's

Arbitration Agreement also prohibits Ms. Nesbitt from joining with others to engage in protected

concerted activity by bringing a class action against SEG asserting her employment-related labor

law rights, guaranteed under the National Labor Relations Act ("NLRA"), §§ 7 and 8(a)(1). That

provision is likewise overbroad and impermissibly in violation of Plaintiffs' rights under the

substantive guarantees set out in the NLRA, and as applied to their FLSA claims.[12]

A.    **SEG's Abitration Agreement impermissibly would lead a reasonable person to conclude that they were prohibited from filing an NLRB charge.**

SEG relies heavily on the Fifth Circuit's holding in *D.R. Horton,* but it forgets an

important part of that holding—the part that invalidates SEG's Arbitration Agreement. In its

December 2013 opinion the court unambiguously held:

---

[12]    A related *D.R.Horton* argument was recently presented to Hon. J., Blackburn, under similar but not exactly the same circumstances; and his ruling was directly against the plaintiffs' position. *Hickey v. Brinker Int'l Payroll Compnay, L.P.,* 2014 WL 622883 at 4-5 (Doc. 45) (No. 13-cv-00951, Feb. 18, 2014). The NLRB's deadline for the filing of its Petition for Certiorari review expires in approximately one week. If no such petition is filed and the Fifth Circuit decision becomes final, Plaintiffs will update the court and opposing counsel as to whether they will withdraw their *D.R.Horton*-based protected concerted activity argument.

The arbitration agreement would violate the NLRA if it prohibited employees from filing unfair labor practice claims with the Board. Even "in the absence of express language prohibiting section 7 activity, a company nonetheless violates section 8(a)(1) if 'employees would reasonably construe the language to prohibit section 7 activity.' " *Cintas Corp. v. NLRB,* 482 F.3d 463, 467 (D.C. Cir 2007).

*D.R. Horton,* 737 F.3d at 363.

The message from *D.R. Horton* that SEG ignores is clear: interference with the right to file an unfair labor practice charge is unlawful. *See, Dish Network Corp.,* 358 NLRB, No. 29, slip op. at 7-8 (2012); *Bill's Electric, Inc.,* 350 NLRB 292, 296 (2007); *U-Haul of California,* 347 NLRB 375, 377-78 (2006), *enf'd. mem.* 255 F. Appx 527 (D.C. Cir. 2007) (holding that an employer violated the Act by maintaining an arbitration policy that employees would reasonably construe to prohibit the filing of unfair labor practice charges, and that did not clarify that the policy did not extend to the filing of unfair labor practice charges).

Relying on the analysis by the NLRB, the Fifth Circuit found that the arbitration agreement at issue created the "reasonable impression" that an employee, by entering into the agreement, is waiving not just his trial rights, but his administrative rights as well. *D.R. Horton,* 737 F.3d at 363-364.

The court noted that the *D.R. Horton* agreement provided that employees agreed to arbitrate, without limitation, numerous claims and that, even though the agreement provided four exceptions, none of the exclusions referred to unfair labor practice claims. *Id.* at 363.

In this matter, SEG's Agreement to Arbitrate explicitly goes farther and covers *all* disputes between the parties. The language SEG drafted states that "You, the student, and Steiner Education Group ("SEG") agree that any dispute or claim between you . . . shall be resolved through binding arbitration . . .." Exhibit 1-A at 8. Not one exemption is listed, and SEG's description of what claims must be arbitrated goes on for

over 10 single-spaced lines, finishing off the expansive (fifth subsection) description, and

concluding that:

> any claim relating in any manner to any act or omission regarding Student's
> relationship with SEG or SEG's employees, whether such dispute arises before,
> during or after Student's attendance of SEG, and whether the dispute is based on
> contract, statute, tort, or otherwise, shall be resolved through binding arbitration
> pursuant to this Section [the "Arbitration Agreement"].

Exhibit 1-A at 8.

This over-broad and impermissible language cannot be saved by the court striking the

improper provision for the same reasons that the impermissible arbitration costs and attorneys'

fee shifting provisions cannot be re-written by the court:  SEG drafted the Arbitration Agreement

without including a savings or severability clause. *See, supra,* at 18-20.

**B.**     **SEG's Arbitration Agreement improperly interferes with Plaintiffs' rights to**
**proceed by way of class and collective action pursuant to the NLRA and the FLSA.**

SEG required everyone who attended their schools to waive having their claims heard or

arbitrated as a class action. In this regard, this case is indistinguishable from part of the decision

in *D.R. Horton, Inc.,* 357 NLRB No. 184 (2012), *overruled,* 737 F.3d 344 (5th Cir. 2013)

(deadline for filing petition for certiorari review still pending to July 15, 2014). There, the Board

held that "employers may not compel employees to waive their National Labor Relations Act

("NLRA") right to collectively pursue litigation of employment claims in all forums, arbitral and

judicial." 357 NLRB No. 184 at 12 – 13.

An employer violates Section 8(a)(1) of the NRLA by maintaining rules that tend to chill

employees in the exercise of their Section 7 rights. *Lafayette Park Hotel*, 326 NLRB 824, 825

(1998), *enf'd* 203 F.3d 52 (D.C. Cir. 1999). Rules explicitly restricting the exercise of Section 7

rights violate Section 8(a)(1). *Lutheran Heritage Village-Livonia*, 343 NLRB 646 (2004). If a

24

rule explicitly infringes on the Section 7 rights of employees, the maintenance of the rule violates the Act. *Guardsmark, LLC v. NLRB,* 475 F.3d 369, 375-376 (D.C. Cir. 2007).

In *D.R. Horton, Inc*., the Board held that employers may not compel employees to waive their NLRA right to collectively pursue litigation of employment claims in all forums, arbitral and judicial. 357 NLRB No.184 at 15.  Individual arbitration can be required, so long as class or collective claims can be sought in a judicial forum. *Id.*

*D.R. Horton* is not contrary to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et. seq*., and *American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304 (2013), does not overrule *D.R. Horton*.

Plaintiffs acknowledge that the Supreme Court has shown deference to enforcement of arbitration agreements. *See, AT & T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1749 (2011). *Stolt-Nielsen S.A. v Animal Feeds Intl. Corp.,* 559 U.S. 662, 684 (2010); *Gilmer v. Interstate/Johnson Lane Corp.* 500 U.S. 20, 32 (1991); *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478 (1989); *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,103 S.Ct. 927, 941 (1983).

However, *D.R. Horton* differs from these cases because the arbitration agreement precludes Plaintiffs from exercising their substantive rights explicitly protected by § 7 of the NLRA. The NLRA "protects employees' ability to join together to pursue workplace grievances, including through litigation. D.R. Horton, 357 NLRB at 2.

By filing an unfair labor practice charge and challenging a prohibition against a collective arbitral remedy the employee in *D.R. Horton* was engaging in conduct that the Board has noted

was "not peripheral but central to the Act's purposes." *Id.* at 4. The Board went on to find that there was no conflict between the NLRA and the FAA "[s]o long as the employer leaves open a judicial forum for class (and collective) claims, employees' NLRA rights are preserved without requiring the availability of class-wide arbitration." *Id*. at 16. SEG's Agreement has no such clause.  The arbitration clause in this case, like in *D.R. Horton,* precludes Plaintiffs from exercising their substantive rights protected by § 7 of the NLRA and § 216(b) of the FLSA.

In *American Express Co. v. Italian Colors Restaurant*, 133 S.Ct. 2304 (2013),  merchants filed a class action suit against the company for violation of the federal antitrust laws. The Supreme Court held that arbitration is a matter of contract and the FAA precludes courts from invalidating a contractual waiver of class arbitration because "the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery."  *American Express Co*., 133 S.Ct. at 2307. The Supreme Court also held that "unless the FAA's mandate has been "overridden by a contrary congressional command," courts cannot invalidate arbitration agreements simply because the claim is based on the violation of a federal statute. *American Express Co.,* 133 S.Ct. at 2309; *CompuCredit Corp. v. Greenwood*, 132 S.Ct. 665, 668-669 (2012).  The Supreme Court noted that "antitrust laws do not guarantee an affordable procedural path to the vindication of every claim." *American Express Co.,* 133 S.Ct.  at 2309.  *American Express Co*. is distinguishable from *D.R. Horton* because it was for a violation of antitrust laws where no statutory provision had explicitly guaranteed the substantive right at issue (to engage in concerted activity by pursuing class or collective remedies).  *But see, Gilmer v. Interstate/Johnson Lane Corp.* 500 U.S. 20, 32 (1991) (enforcing ADEA arbitration requirement).

In *D.R. Horton*, the charging party was required, as a condition of employment, to sign an arbitration agreement that contained a clause precluding Charging Party and other employees covered by the Act from filing joint, class, or collective claims in arbitral and judicial forums. The Board explained that an employer violates Section 8(a)(1) of the Act when it requires employees, as a condition of their employment, to sign an arbitration agreement that prohibits them from "filing joint, class, or collective claims addressing their wages, hours, or other working conditions against the employer in any forum, arbitral or judicial." 357 NLRB No. 184 at 1.  The difference between *American Express Co.* and *D.R. Horton* is that the latter it is not just a matter based on the unpalatable result of the application of a federal statute (federal antitrust laws), but rather, that substantive rights explicitly guaranteed under the NRLA to pursue protected concerted activity with respect to a federal statute (the FLSA) that itself guarantees the right to proceed together with others were denied the charging party in D.R. Horton, and are being denied in this case.

No Tenth Circuit case has yet to consider the opinion announced in the *D.R. Horton* case. Admittedly, the treatment of that decision in other circuits has not been consistent with the NLRB's holding. *See, e.g., D.R. Horton, Inc.,* 357 NLRB No. 184 (2012), *overruled*, 737 F.3d 344 (5th Cir. 2013)  (deadline for filing petition for certiorari review still pending); *Owen v. Bristol Care, Inc.* 702 F.3d 1050 (8th Cir. 2013); *Richards v. Ernst & Young,* 2013 WL 4437601 (9th Cir. 2013); *Sutherland v. Ernst & Young,* 2013 WL 403844 (2013).

This same argument has been the subject of a Colorado federal district court opinion referenced by SEG (*Hickey v. Brinker Int'l; Payroll Company, L.P.,* 2014 WL 622883 (D. Colo. 2014). In this case, an unfair labor practice charge has been filed with the NLRB challenging the waiver of class remedies in SEG's Arbitration Agreement as a violation of the NLRA.  The

charge was filed on June 18, 2014. Ex. 4. Whether the decision of the NLRB then validates or

invalidates the agreements, the parties would be able to appeal the decision instead of inviting

potentially conflicting opinions from the district courts within the circuit.  But see *Spears v.*

*MidAmerica Waffles, Inc.,*11-2273-CM, 2012 WL 2568157 at *2 (2012) (D. Kan. July 2, 2012).

The doctrine of primary jurisdiction provides that when the same controversy may be

presented to a court or to the NLRB, it should be presented to the Board.  *Sears Roebuck & Co.*

*v. San Diego Cnty. Dits. Council of Carpenters,* 436 U.S. 180, 202 (1978).  "As applied in a

labor relations context, the doctrine of primary jurisdiction is a recognition of congressional

intent to have matters of national labor policy decided in the first instance by the National Labor

Relations Board." *Glaziers & Glassworkers Local Union 767 v. Custom Auto Glass Distribs,*

689 F.2d 1339, 1342 (9th Cir. 1982).  Accordingly, if the court does not deny SEG's Motion to

Compel for the reasons set forth above, the court should stay this matter until Ms. Nesbitt's

pending NLRB charge is resolved.

## V.    CONCLUSION

For the reasons stated above, Defendants' Motion to Compel Arbitration should be

denied.

Respectfully submitted this 8th day of July, 2014.


**SAWAYA & MILLER LAW FIRM**


s/David H. Miller

By:    _____
David H. Miller, Esq.,
Leslie Krueger-Pagett, Esq.
Sawaya & Miller Law Firm
1600 Ogden Street

Denver, Colorado 80218
Tele:   303-839-1650 x 1090
Fax:    720-235-4380
Email: DMiller@sawayalaw.com
        LPagett@sawayalaw.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned individual hereby certifies that on the 8th day of July, 2014, a true and correct copy of this **PLAINTIFF'S RESPONSE  TO MOTION TO COMPEL ARBITRATION** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following email recipients and addresses:

Natalia Ballinger, Esq.
Greenberg Traurig, LLP
1200 Seventeenth Street – Suite 2400
Denver, CO 80202
ballingern@gtlaw.com

Scott D. Segal
335 South Biscayne Boulevard, Suite 3405
Miami, LF 33131
ssegal@myhrattorney.com

Attorneys for Defendants FCNH, Inc., Virginia Massage Therapy, Inc., Mid-Atlantic Massage Therapy, Inc., Steiner Education Group, Inc., Steiner Leisure Ltd., and SEG Cort LLC

s/David H. Miller
_____
David H. Miller