IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-00990-RBJ

RHONDA NESBITT, individually, and on behalf of all others similarly situated,

 Plaintiff,

v.

FCNH, INC.,
VIRGINIA MASSAGE THERAPY, INC.,
MID-ATLANTIC MASSAGE THERAPY, INC.,
STEINER EDUCATION GROUP, INC.,
STEINER LEISURE LTD.,
SEG CORT LLC, d/b/a as the "Steiner Education Group",

 Defendants.

## ORDER

This matter is before the Court on the defendants' Motion to Compel Arbitration of Individual Claims and to Stay Proceedings [ECF No. 10]. For the following reasons, the motion is denied.

## BACKGROUND

The plaintiff, Ms. Nesbitt, filed this action with the Court on April 7, 2014. In her Complaint she alleges violations of the Fair Labor Standards Act ("FLSA") and numerous state wage and hour laws. According to the Complaint, the defendants are each involved in the management or operation of, or have an ownership interest in, the Steiner Education Group; and the Steiner Education Group runs schools of massage therapy and esthetics in Arizona, Colorado, Connecticut, Florida, Maryland, Massachusetts, Illinois, Nevada, New Jersey, Pennsylvania,

Texas, Utah, Virginia, and Washington. Ms. Nesbitt claims that while enrolled as students of massage therapy at one of these schools, she and the putative class members were required to perform massages for paying members of the general public without compensation. She alleges that the labor provided by herself and the putative class members established an employment relationship for purposes of the FLSA and state labor laws.

In the Complaint, Ms. Nesbitt admits that she entered into an arbitration agreement at the time of enrollment. The Arbitration Agreement provides that

> [y]ou, the student, and Steiner Education Group ("SEG") agree that any dispute or claim between you and SEG (or any company affiliated with SEG or any of its or SEG's officers, directors, employees or agents) arising out of or relating to (1) this Enrollment Agreement, or the Student's recruitment, enrollment or attendance at SEG, (2) the education provided by SEG, (3) SEG's billing, financial aid, financing options, disbursement of funds or career service assistance, (4) the enforceability, existence, scope or validity of this Arbitration Agreement, or (5) any claim relating in any manner, to any act or omission regarding Student's relationship with SEG or SEG's employees, whether such dispute arises before, during or after Student's attendance at SEG, and whether the dispute is based on contract, statute, tort, or otherwise, shall be resolved through binding arbitration pursuant to this Section (the "Arbitration Agreement").

[ECF No. 1-1].

It continues,

> Arbitration shall be conducted in accordance with the Commercial Rules of the American Arbitration Association applying federal law to the fullest extent possible, and the substantive and procedural provisions of the Federal Arbitration Act (9 U.S.C. §§ 1–16) shall govern this Arbitration Agreement and any and all issues relating to the enforcement of the Arbitration Agreement and the arbitrability of claims between the parties. Judgment upon the award rendered by the Arbitrator may be entered in any court having competent jurisdiction.

*Id.*

As to costs, the Arbitration Agreement provides that "[e]ach party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs." *Id.*

2

The agreement then issues the following warning, in capital letters:

> THIS ARBITRATION AGREEMENT LIMITS CERTAIN RIGHTS, INCLUDING THE RIGHT TO MAINTAIN A COURT ACTION, THE RIGHT TO A JURY TRIAL, THE RIGHT TO PARTICIPATE IN ANY FORM OF CLASS OR JOINT CLAIM, THE RIGHT TO ENGAGE IN DISCOVERY (EXCEPT AS PROVIDED IN THE APPLICABLE ARBITRATION RULES), AND THE RIGHT TO CERTAIN REMEDIES AND FORMS OF RELIEF. OTHER RIGHTS THAT YOU OR SEG WOULD HAVE IN COURT ALSO MAY NOT BE AVAILABLE IN ARBTRATION.

*Id.*

Finally, it ends with a "right to reject" provision, which states that the student

> may reject this Arbitration Agreement by mailing a signed rejection notice to: Attention: Steiner Education Group Corporate Office, Compliance Department, 2001 W Sample Road, Ste. 318, Pompano Beach, FL 33064 within 30 days after the date I sign this Enrollment Agreement.  Any rejection notice must include my name, address, [and] telephone number.

*Id.*

The question for purposes of this motion is whether the Arbitration Agreement is enforceable against Ms. Nesbitt such that this Court must compel arbitration of her claims.

## LEGAL ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  Section 2 provides,

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*.

9 U.S.C. § 2 (emphasis added).  This provision reflects a "liberal federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), as well as "the fundamental principle that arbitration is a matter of contract," *Rent-A-Ctr., W., Inc.*

*v. Jackson*, 561 U.S. 63, 67 (2010). "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original). However, "[u]nlike the general presumption that a particular issue is arbitrable when the existence of an arbitration agreement is not in dispute, when the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) (internal citations omitted).

### A. Is the Arbitration Agreement unconscionable?

Section 2 of the FAA includes a saving clause that allows for arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Colorado's test for unconscionability does not explicitly favor or disfavor arbitration. *See Bernal v. Burnett*, 793 F. Supp. 2d 1280, 1287 (D. Colo. 2011).

The first question at issue in this case is whether the Arbitration Agreement is unenforceable because it is unconscionable. A federal court must apply state contract law principles when determining whether an arbitration agreement is valid and enforceable. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Colorado law, one of

the legal grounds for revoking a contract is unconscionability.  *See, e.g.*, *Davis v. M.L.G. Corp.*, 712 P.3d 985, 991 (Colo. 1986); *Univ. Hills Beauty Acad., Inc. v. Mountain States Tel. & Tel. Co.*, 554 P.2d 723, 726 (Colo. App. 1976).  Colorado courts consider a number of factors in deciding whether a contractual provision is unconscionable, including:

> (1) the use of a standardized agreement executed by parties of unequal bargaining power; (2) the lack of an opportunity for the customer to read or become familiar with the document before signing it; (3) the use of fine print in the portion of the contract containing the provision in question; (4) the absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive fairness; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) the circumstances surrounding the formation of the contract, including setting, purpose, and effect.

*Bernal*, 793 F. Supp. 2d at 1286 (citing *Davis*, 712 P.3d at 991) [hereinafter "the *Davis* factors"]. The *Davis* factors encompass both procedural and substantive unconscionability, both of which must be shown in Colorado.  *See Vernon v. Qwest Commc'ns Intern., Inc.*, 925 F. Supp. 2d 1185, 1194–95 (D. Colo. 2013); *Davis*, 712 P.2d at 991.  The burden of proof is on the party opposing arbitration.  *See Weller v. HSBC Mortg. Servs., Inc.*, 971 F. Supp. 2d 1072, 1080 (D. Colo. 2013).

The plaintiff argues that most of the *Davis* factors weigh in her favor, and that taken together they show that the Arbitration Agreement is both substantively and procedurally unconscionable.  The Court begins with an analysis of the alleged procedural unfairness of the agreement.  The first, second, third, sixth, and seventh *Davis* factors relate to procedural unconscionability.  Looking to the first factor, the Arbitration Agreement is a standardized agreement between parties with unequal bargaining power.  However, this factor by itself is not enough for a finding of unconscionability.  *See Concepcion*, 131 S. Ct. at 1750 ("[T]he times in which consumer contracts were anything other than adhesive are long past.").  The second factor

looks to whether there was an opportunity to read and become familiar with the document before signing it. Ms. Nesbitt contends that she was not given an opportunity to become familiar with the document before signing it, alleging that she was presented with it at the time of enrollment and was required to sign all of her enrollment forms before being able to speak to a financial aid representative. She does not claim, however, that she was denied the opportunity to read the provision or that she was rushed through the process of enrolling. Moving along to the third factor, Ms. Nesbitt argues that the defendants used "fine print" in the portion of the enrollment forms containing the Arbitration Agreement. The Court notes that while the typeface does appear small, it is no smaller than the other enrollment provisions. *See* [ECF No. 1-1].[1] Ms. Nesbitt signed her initials next to these provisions, which were written in the same size font, and she has not claimed that she was unable to read them before signing them. Furthermore, the section of the Arbitration Agreement summarizing numerous waivers is written in capital letters, whereas none of the other enrollment provisions include capitalized sections.

The sixth factor requires analysis of the relationship between the parties, including issues of assent, notice, and unfair surprise. The biggest question at issue here is assent. The agreement provided a "right-to-reject" provision wherein Ms. Nesbitt could have opted out of the Arbitration Agreement within thirty days of enrolling. However, the assent factor also weighs in Ms. Nesbitt's favor, as the other sections of the enrollment form required her initials (showing affirmative assent), whereas only the Arbitration Agreement did not. Finally, the seventh factor is a catchall that allows for consideration of all of the factors surrounding formation of the contract. The plaintiff has presented no additional factors for consideration.

---

[1] Though the parties reference a nine-page Enrollment Agreement, the Court has only been provided with the one page that contains the Arbitration Agreement. [ECF No. 1-1]. That said, it contains other provisions, specifically those entitled Crime Statistics, Photo Release, Field Trip Release, and Confidential Information. All of these provisions appear in the same typeface and font size.

Taking into account all of the factors surrounding formation of the Arbitration Agreement, the Court finds that the agreement is not procedurally unconscionable. While the contract was certainly one of adhesion, Ms. Nesbitt was provided an opportunity to read the provision before signing it; notice of a variety of waivers was included in capitalized letters and in the same font size and typeface as the rest of the enrollment form sections; and Ms. Nesbitt was given the opportunity to opt out of the provision if she so chose. Furthermore, while she may not have had an opportunity to become familiar with the document on the date she signed it, she had thirty days to familiarize herself with its terms and opt out after enrolling. For these reasons, the Court finds that the provision is procedurally conscionable.

As discussed earlier, a contract provision is unenforceable only if both procedural and substantive unconscionability can be shown. Since the contract is procedurally conscionable, the Court need not address the substantive factors.

**B. Do provisions of the Arbitration Agreement undermine federal statutory policy?**

The Supreme Court has recognized that arbitration is generally a sufficient medium for resolving federal statutory claims. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000). In fact, "even claims arising under a statute designed to further important social policies may be arbitrated." *Id.* However, the presumption in favor of arbitration is not without its limits. *See Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999). Only "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, [will] the statute . . . continue to serve both its remedial and deterrent function." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985). The presumption in favor of arbitration "falls apart, however, if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights."

*Shankle*, 163 F.3d at 1234 (collecting cases). "Accordingly, an arbitration agreement that prohibits use of the judicial forum as a means of resolving statutory claims must also provide for an effective and *accessible* alternative forum." *Id.* (emphasis added). Furthermore, an arbitration provision may not operate "'as a prospective waiver of a party's right to pursue statutory remedies.'" *Am. Express Co. v. Italian Rest.*,133 S. Ct. 2304, 2310 (2013) (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19) (emphasis omitted).

The second question at issue in this motion is whether the Arbitration Agreement is unenforceable because it would prevent Ms. Nesbitt and the putative class members from effectively vindicating their statutory rights under the FLSA.[2] Ms. Nesbitt argues that there are two provisions that undermine her statutory rights: the section directing that arbitration be conducted in accordance with the Commercial Rules of the American Arbitration Association and the provision providing that each party shall bear the expense of its own counsel, experts, witnesses, and preparation and presentation of proofs. Notably, all that the plaintiff discusses with regard to the Commercial Rules appears to be the fees, costs, and expenses associated with arbitration under those rules as compared to the Employment Rules. Taking these two criticisms together, her argument is that the high cost of arbitration and the duty that each side bear its own expenses (particularly of counsel) render the Arbitration Agreement unenforceable. Furthermore, because the agreement does not contain a savings clause, it cannot be enforced in any capacity. The Court agrees.

In *Shankle*, the Tenth Circuit found an arbitration agreement unenforceable in the employment context because it placed the plaintiff "between the proverbial rock and a hard

---

[2] To be clear, this Court is not deciding that the plaintiff had an employment relationship with SEG. That goes to the merits of the claim and is not a matter that the Court resolves at this stage. Similarly, the Court expresses no opinion at this stage as to whether, even if the Court were later to determine as a matter of law that an employment relationship existed, this case is appropriate for collective or class treatment.

place—it prohibited use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum." 163 F.3d at 1235.  The court reasoned that the employer required the plaintiff "to agree to mandatory arbitration as a term of continued employment, yet failed to provide an accessible forum in which he could resolve his statutory rights.  Such a result clearly undermines the remedial and deterrent functions of the federal anti-discrimination laws." *Id.*  The defendants argue that this case does not concern an employment relationship, and that therefore the reservations in *Shankle* are not applicable here.  That is a merits argument that the Court does not here address.  *See supra* note 2.  Assuming without deciding the existence of an employment relationship, and assuming for present purposes only that the defendants required the plaintiff to perform services on its behalf without compensation, the case implicates federal labor laws.

  *Shankle* stands for the position that "an arbitration agreement requiring a plaintiff to share in the costs of arbitration is unenforceable when the agreement effectively deprives the plaintiff of an accessible forum to resolve his statutory claim and vindicate his statutory rights." *Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-CV-02272-WJM-KLM, 2011 WL 2791338, at *10 (D. Colo. July 15, 2011) (citing *Perez v. Hospitality Ventures–Denver LLC*, 245 F. Supp. 2d 1172, 1173–74 (D. Colo. 2003); *Gourley v. Yellow Transp.*, 178 F. Supp. 2d 1196, 1204 (D. Colo. 2001)).  The plaintiff argues that under the Commercial Rules she will likely incur between $2,320.50 and $12,487.50 in costs simply paying for the arbitrator's time, let alone the expenses associated with discovery, producing witnesses, the room rental, and other arbitration-related necessities.  *See* Plaintiff's Response [ECF No. 19] at 15.  The Employment Rules, on the other hand, place virtually all of the arbitration costs on the employer (except for the $200 filing fee) where the dispute arises out of an employer-promulgated plan (as opposed to an

individually-negotiated employment contract).  *See* American Arbitration Association, *Employment Arbitration Rules & Mediation Procedures* 32–34 (Rules Amended and Effective Nov. 1, 2009, Fee Schedule Amended and Effective Nov. 1, 2014), *available at* http://www.adr.org/employment.

Ms. Nesbitt has filed an affidavit establishing that she cannot afford the costs of proceeding under the Commercial Rules.  [ECF No. 19-1].  The defendants' only argument in response is that she might be eligible for a discounted rate based on a showing of financial hardship.  Notably, application of the Employment Rules would save Ms. Nesbitt from the risk of bearing these costs should she be found not eligible for fee waivers.  The Employment Rules do not require a showing of financial hardship, presumably to ensure that employees are not discouraged from vindicating their statutory rights.  Since this is an (alleged) employment dispute, arguably the Employment Rules should apply.  At a minimum, an arbitrator should be free to decide which rules apply based on his or her interpretation of the nature of the case.  The Arbitration Agreement as written, however, would not permit such flexibility.

Ms. Nesbitt also points out that under the terms of the Arbitration Agreement she will be required to bear the costs of her own counsel.  The FLSA, however, provides that where judgment is awarded to the plaintiff, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  This term therefore amounts to a prospective waiver of Ms. Nesbitt's right to pursue a statutory remedy, specifically attorney's fees.  The defendants have made no argument in response.

The Court finds that these two provisions are unenforceable.  First, the application of the Commercial Rules and their fee splitting provisions, along with the condition that Ms. Nesbitt bear the costs of producing experts, witnesses, and preparation and presentation of proofs, would

effectively preclude Ms. Nesbitt from pursuing her claims.[3] *See Daugherty*, 2011 WL 2791338 at *11 (citing *Shankle*, 163 F.3d at 1235).  Second, requiring the plaintiff to bear the costs of her own counsel even should she prevail amounts to a prospective waiver of a statutory remedy while simultaneously undermining the enforcement scheme erected by the FLSA.  The FLSA relies on individuals to bring claims as private attorneys general with the promise that should they prevail they will be awarded their reasonable attorney's fees in addition to damages.  *See id.*; *Gourley*, 178 F. Supp. 2d at 1204.  Eliminating this assurance may significantly chill individuals and attorneys from bringing these claims.  As such, arbitration agreements denying a prevailing civil rights plaintiff the right to attorney's fees are presumptively void as a matter of public policy.  *See Gourley*, 178 F. Supp. 2d at 1204.

The next question is whether the unenforceable provisions are severable such that the Arbitration Agreement can be saved.  "A court is without authority to alter or amend contract terms and provisions absent an ambiguity in the contract."  *Awbrey v. Pennzoil Co.*, 961 F.2d 928, 930 (10th Cir. 1992).  "[W]here a contract contains a void arbitration provision, it must either be deemed unenforceable where there is no savings clause to the contract or, in keeping with the presumption in favor of arbitrability in the case of a contract with a savings clause, the void language may be stricken and the arbitration agreement otherwise enforced."  *Daugherty*, 2011 WL 2791338 at *12.  Because there is no savings clause and because the agreement itself is unambiguous its provisions cannot be stricken, rendering the entire Arbitration Agreement unenforceable.  *Compare Fuller v. Pep Boys--Manny, Moe & Jack of Delaware, Inc.*, 88 F. Supp. 2d 1158, 1162 (D. Colo. 2000) (striking fee-splitting provision and enforcing remainder of

---

[3] In response to the defendant's argument that Ms. Nesbitt hasn't shown whether she would be eligible for reduced or waived arbitration fees, the Court still finds that the requirement that she bear these other arbitration-related costs would preclude her from being able to pursue her claim. Furthermore, should Ms. Nesbitt be able to afford the costs of arbitration, the attorney's fee provision would still remain unenforceable.

arbitration agreement where savings clause could be found) *with Gourley*, 178 F. Supp. 2d at 1204 (refusing to enforce arbitration agreement with an unenforceable fee-splitting provision because the agreement did not contain severability or savings clause).  The Court is without authority to alter or amend the agreement under these circumstances.

**C.   Does the Arbitration Agreement violate the NLRA?**

The plaintiff's third and final argument is that the arbitration provision violates the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, in two distinct ways.  The plaintiff voluntarily dismissed one of her arguments in support of this claim, *see* Plaintiff's Notice of Supplemental Authorities [ECF No. 20], while maintaining the contention that the Arbitration Agreement is so broad that it would lead a reasonable person to believe that he or she was prevented from filing a charge before the National Labor Relations Board ("NLRB"). Because the Court has found the Arbitration Agreement unenforceable on other grounds, the question of whether it violates the NLRA is moot.

## ORDER

For the foregoing reasons, the defendants' Motion to Compel Arbitration of Individual Claims and to Stay Proceedings [ECF No. 10] is DENIED. The Court requests that counsel jointly contact Chambers within 14 days to reset the initial scheduling conference.

DATED this 19th day of November, 2014.

BY THE COURT:

*[signature]*

R. Brooke Jackson
United States District Judge